[No. 37866.     En Banc.     February 19, 1965.]

*In the Matter of the Application for a Writ of Habeas Corpus of* DON ANTHONY WHITE, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*The Attorney General* and *Stephen C. Way, Assistant,* for respondent.

DONWORTH, J.—The history of petitioner's resort to his state remedies in regard to his conviction on two counts of murder is exhaustively and accurately recorded in Judge Hale's separate opinion in this proceeding. We have no disagreement with the factual statements contained therein.

However, a majority of the court is of the opinion that, in view of the unusual circumstances (described below) under which this petition for habeas corpus comes before us, this court presently has no jurisdiction of the subject matter of this proceeding.

We are also of the opinion that, assuming arguendo that

*Reported in 399 P. (2d) 522.

this court does have such jurisdiction, it should decline to exercise it because it would be merely rendering an advisory opinion.

I.

Briefly reviewing the procedure in the present case subsequent to our denial of the petitioner's petition for rehearing on March 13, 1963 (with respect to this court's affirmance of his conviction in *State v. White,* 60 Wn. (2d) 551, 374 P. (2d) 942 (1962)), the petitioner:

(1) Petitioned the United States Supreme Court for a writ of certiorari to review our affirmance of his conviction. His petition was denied October 21, 1963, in *White v. Washington,* 375 U. S. 883, 11 L. Ed. (2d) 113, 84 S. Ct. 154;

(2) Petitioned this court for a writ of habeas corpus which, after a hearing en banc, was denied on March 19, 1964, in *In re White v. Rhay,* 64 Wn. (2d) 15, 390 P. (2d) 535;

(3) On March 25, 1964, petitioned the United States District Court for the Eastern District of Washington, Southern Division, for a writ of habeas corpus, pursuant to 28 U.S.C.A. § 2241, *et seq.,* in which he challenged the validity of the judgment and sentence which had been affirmed by this court in *State v. White, supra.* The respondent named in the petition was the Superintendent of the Washington State Penitentiary who held the petitioner in his custody. An order to show cause, directed to respondent in the petition, was issued on the same date, March 25, 1964. He appeared in the proceeding through an assistant attorney general and moved to dismiss the petition on the ground that the petitioner had failed to exhaust his state remedies. Of course, all the previously mentioned state proceedings had ended, and no state proceeding was currently pending or in progress. This motion was heard by the federal district court on July 31, 1964.

On August 12, 1964, the United States District Court entered an order reading, in part:

" . . . The court having heard the arguments in support of the respondent's motion to dismiss for failure to

exhaust state remedies pursuant to 28 USC 2254, and the arguments of the petitioner in opposition thereto; and having read and considered the memoranda of authorities submitted by the respective parties and having reviewed the files and records herein; *and the petitioner and the respondent,* by and through their respective attorneys, *having agreed that the petitioner be granted the opportunity* to make application for a writ of habeas corpus to the Supreme Court of the State of Washington *setting forth such issues therein as are challenged in this cause* by the respondent upon the grounds of failure to exhaust state remedies pursuant to 28 USC 2254, as the petitioner shall deem to be appropriate, to be filed in the Supreme Court of the State of Washington not later than August 17, 1964; now, therefore,

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all further proceedings in this cause be held in abeyance, subject to the filing by the petitioner, DON ANTHONY WHITE, not later than August 17, 1964 of an application for a writ of habeas corpus in the Supreme Court of the State of Washington and pending the final disposition of the issues therein by the Supreme Court of the State of Washington *and subject to the further order of this court.*" (Italics ours.)

(The order also stayed the execution of the sentence imposed by the Superior Court for King County until further order of the United States District Court.)

The petitioner then filed a new petition for a writ of habeas corpus in this state supreme court, alleging therein substantially the same matters as were alleged in his petition filed in the district court on March 25, 1964. This petition was heard en banc by this court on October 9, 1964.

Our reasons for stating that this court has no jurisdiction of the subject matter of this proceeding are based principally upon 28 U.S.C.A. § 2243, which directs the manner in which the federal district court is to entertain a petition for a writ of habeas corpus, and 28 U.S.C.A. § 2254, which directs that, in order to entertain the petition in the manner provided for in § 2243, the federal district court shall first decide whether the petitioner has exhausted his state remedies. The requirements of these two statutory sections are discussed in two recent decisions of the United

States Supreme Court, interpreting the powers of the federal district court in habeas corpus proceedings under 28 U.S.C.A. § 2241, *et seq.*, with respect to persons convicted of felonies in state courts. They are *Fay v. Noia,* 372 U. S. 391, 9 L. Ed. (2d) 837, 83 S. Ct. 822 (1963); *Townsend v. Sain,* 372 U. S. 293, 9 L. Ed. (2d) 770, 83 S. Ct. 745 (1963).

In *Noia,* the petitioner had failed to appeal to the highest court in his state from a conviction of murder. His two codefendants had appealed and their convictions were affirmed but they were subsequently freed through federal habeas corpus proceedings because it was found that their confessions had been coerced, and hence their admission in evidence violated their federal constitutional rights.

Noia, in a federal habeas corpus proceeding, was denied relief by the district court because, having failed to appeal his conviction to the state appellate court, he had not exhausted his state remedies under 28 U.S.C.A. § 2254, which provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . ."

On appeal, the federal court of appeals reversed the district court's order and granted him the relief sought. The United State Supreme Court granted certiorari, and, after an exhaustive review of the history of the writ of habeas corpus in England and in the United States, affirmed the court of appeals.

The majority opinion in *Noia* is so long that extensive quotation is impractical. We, therefore, will attempt to state in substance the pertinent parts of the decision which seem to us to delineate the powers and duties of federal district courts in passing upon petitions for habeas corpus filed by state prisoners.

(1) The question of whether a state prisoner has exhausted the remedies available to him in the courts of the state is to be determined by the federal district court. The powers of the federal courts in habeas corpus proceed-

ings are based upon the supremacy clause of the United States Constitution and the Act of 1867, as amended (28 U.S.C.A. § 2241, *et seq.*).

In *Noia,* it was said, at page 398:

" . . . (1) Federal courts have *power* under the federal habeas statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies; the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute. (2) Noia's failure to appeal was not a failure to exhaust 'the remedies available in the courts of the State' as required by § 2254; that requirement refers only to a failure to exhaust state remedies still open to the applicant at the time he files his application for habeas corpus in the federal court. . . ."

(2) Once the federal district court assumes jurisdiction, the jurisdiction is exclusive, under 28 U.S.C.A. § 2243, which reads:

"A court, justice or judge entertaining an application for a writ of habeas corpus *shall forthwith* award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless* it appears from the application that the applicant or person detained is not entitled thereto. . . . [Then follow paragraphs relevant to the appropriate subject of the order to show cause, the return, and the hearing.]
*"The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."* (Italics ours.)

The statute clearly provides only two alternatives. Either the federal district court shall take jurisdiction of the subject matter and hold its hearings so as to try the matter, or it shall dismiss the matter. Nowhere in the statute is there a provision that the federal district court can hold jurisdiction of the subject matter while the parties return any questions raised by the petition to the state supreme court by stipulation of the parties. The statute does not

provide for any form of remand of questions to the state supreme court, directly or indirectly.

(3) In the hearing that is required under 28 U.S.C.A. § 2243, the federal district court has the power to take testimony and try the facts anew in order to decide whether a state prisoner has been deprived of a federal constitutional right. The last paragraph of § 2243, as emphasized above, shows this.

In *Noia*, the majority, referring to the Act of 1867, said, at page 417:

" . . . This Court, shortly after the passage of the Act, described it in equally broad terms: 'This legislation is of the most comprehensive character. It brings within the *habeas corpus* jurisdiction of every court and of every judge every possible case of privation of liberty contrary to the National Constitution, treaties, or laws. It is impossible to widen this jurisdiction.' *Ex parte McCardle*, 6 Wall. 318, 325-326."

And, further in the opinion, it was said, at page 422:

" . . . Even if the state court adjudication turns wholly on primary, historical facts, the Federal District Court has a broad *power* on habeas to hold an evidentiary hearing and determine the facts."

(4) If the federal district court decides (either with or without an evidentiary hearing) to grant the petition, it has power to order the release of the state prisoner either absolutely or conditionally. The condition usually imposed is that the state court grant the petitioner a new trial within a specified time. The district court has no power to revise the state court's judgment.

This rule is stated in *Noia*, at page 430:

" . . . And the broad power of the federal courts under 28 U.S.C. § 2243 summarily to hear the application and to 'determine the facts, and dispose of the matter as law and justice require,' is hardly characteristic of an appellate jurisdiction. Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner. . . ."

Such relief was granted in the *Horn, Gonzales, and Griffith* cases, all three of which originated in the courts of the state of Washington and involved persons convicted of first degree murder. (1) *In re Horn v. State*, 52 Wn. (2d) 613, 328 P. (2d) 159 (1958). (In the *Horn* case, a federal habeas corpus was issued June 27, 1959, by order of the Federal District Court for the Eastern District of Washington, cause No. 1385. No opinion was reported.) (2) *Cranor v. Gonzales*, 226 F. (2d) 83 (C.A. 9th, 1955).[1] (3) *State v.*

---

[1] In *Cranor v. Gonzales*, 226 F. (2d) 83, the court of appeals affirmed the habeas corpus relief granted by federal district court in *Giron v. Cranor*, 116 F. Supp. 92, after an independent factual trial on new evidence produced in that court by petitioner.

Gonzales had been convicted in the Superior Court for King County of murder in the first degree, and was sentenced to life imprisonment on April 28, 1950. He did appeal to the Supreme Court of the State of Washington, but his appeal was dismissed for lack of prosecution without a hearing as to the merits. He later filed a petition in the Washington State Supreme Court for a writ of habeas corpus, which was denied.

He then filed a similar petition in the federal district court. His principal contention was that the confession which was admitted in evidence at his trial was obtained from him by striking and beating him and by threats of more such physical violence. The district court, after holding its own evidentiary hearing, ruled that Gonzales' confession (self-incrimination) had been unconstitutionally obtained by the police. In granting him habeas corpus relief, the district court said:

". . . The order will provide that Gonzales be released, unless the State grants him a new trial within sixty days after the date of the order, or, if appeal is taken, within sixty days after receipt by the Clerk of this Court of a mandate of the Court of Appeals affirming the order." *Giron v. Cranor*, 116 F. Supp. 92, 97.

The court of appeals, in affirming, held that the federal district court had power to hold an evidentiary hearing and retry the factual issues. The court quoted from *Brown v. Allen*, 344 U. S. 443, 97 L. Ed. 469, 73 S. Ct. 397, as follows:

"But the jurisdiction assumed and undertaken by the district court in this case was in no sense equivalent to the jurisdiction which the Supreme Court exercised in the Stein case [346 U. S. 156, 97 L. Ed. 1522, 73 S. Ct. 1077] and in no sense constituted a review or overruling of the case in the State court. The jurisdiction of the district court, if it existed, was that described by Mr. Justice Frankfurter in Brown v. Allen, supra, 344 U. S. at page 510, 73 S. Ct. at page 448; 'Insofar as this jurisdiction enables federal district courts to entertain claims that State Supreme Courts have denied rights guaranteed by the United States Constitution, it is not a case of a lower court sitting in judgment on a

*Griffith,* 52 Wn. (2d) 721, 328 P. (2d) 897 (1958), *cert. den.*
359 U. S. 1015, 3 L. Ed. (2d) 1039, 79 S. Ct. 1156 (1959);
*Griffith v. Rhay,* 282 F. (2d) 711 (1960) (reversing 177 F.
Supp. 386, and ordering habeas corpus to issue.) In none
of these cases did the federal district court try to return
the case to the Washington State Supreme Court before
it proceeded, although the question of exhaustion of state
remedies was obviously present in each of these cases. Such
question had to be answered in order for the federal court
to properly assume jurisdiction.

In *Townsend v. Sain, supra* (which was decided the same
day as *Noia*), the Supreme Court discussed the problem
as to when the federal district court must grant a state
prisoner a factual hearing on his application for habeas
corpus. The majority stated the rule, at page 311, as fol-
lows:

"The rule could not be otherwise. The whole history of
the writ—its unique development—refutes a construction
of the federal courts' habeas corpus powers that would as-
similate their task to that of courts of appellate review.
The function on habeas is different. It is to test by way of
an original civil proceeding, independent of the normal
channels of review of criminal judgments, the very gravest
allegations. State prisoners are entitled to relief on federal
habeas corpus only upon proving that their detention vio-
lates the fundamental liberties of the person, safeguarded
against state action by the Federal Constitution. Simply
because detention so obtained is intolerable, the oppor-
tunity for redress, which presupposes the opportunity to
be heard, to argue and present evidence, must never be
totally foreclosed. See *Frank v. Mangum,* 237 U. S. 309,
345-350 (dissenting opinion of Mr. Justice Holmes). It is
the typical, not the rare, case in which constitutional claims

---

higher court. It is merely one aspect of respecting the Supremacy
Clause of the Constitution whereby federal law is higher than State
law. It is for the Congress to designate the member in the hierarchy
of the federal judiciary to express the higher law. The fact that Congress
has authorized district courts to be the organ of the higher law rather
than a Court of Appeals, or exclusively this Court, does not mean that
it allows a lower court to overrule a higher court. It merely expresses
the choice of Congress how the superior authority of federal law should
be asserted.' . . ." *Cranor v. Gonzales,* 226 F. (2d) 83, 91.

turn upon the resolution of contested factual issues. Thus a narrow view of the hearing power would totally subvert Congress' specific aim in passing the Act of February 5, 1867, of affording state prisoners a forum in the federal trial courts for the determination of claims of detention in violation of the Constitution. The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.

"III.

"We turn now to the considerations which in certain cases may make exercise of that power mandatory. The appropriate standard—which must be considered to supersede, to the extent of any inconsistencies, the opinions in *Brown v. Allen*—is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

In further elaboration, the majority stated, at page 318:

". . . Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's *duty* to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas. That was settled in *Brown v. Allen, supra,* at 506 (opinion of Mr. Justice Frankfurter)." (Italics ours.)

Having in mind these two recent decisions of the Supreme Court, both cases having been cited, and relied on by both parties, we now consider their application to the case before us.

As pointed out above, the petitioner in the present case had previously invoked the jurisdiction of the federal dis-

trict court by filing his petition therein for a writ of habeas corpus challenging the validity on federal constitutional grounds of the judgment and sentence of death which was affirmed by this court in *State v. White, supra.*

The federal district court, after a hearing, entered the order of August 12, 1964, a portion of which is quoted above.

As we read the order, the district court has taken jurisdiction thereof. But because the parties by their counsel have stipulated that the petitioner be granted an opportunity to make an application to this court for a writ of habeas corpus setting forth such issues therein as are challenged in this cause (*i.e.* in the federal district court) by the superintendent of the state penitentiary "upon the grounds of failure to exhaust state remedies pursuant to 28 U.S.C. § 2254," the federal district court abated its own proceedings, but *retained* its jurisdiction.

For the reasons stated herein, we are of the opinion that the federal district court has exclusive jurisdiction of this matter, has final authority to decide all federal questions of law posed, and has power to hold a factual hearing if deemed necessary to enable it to decide the issues presented by the petition filed therein March 25, 1964, including the issue of whether the petitioner has exhausted his state remedies under § 2254.

It follows that we must decline to pass upon the petition for habeas corpus filed in this court by the petitioner on August 17, 1964, because this court has no jurisdiction of the matters alleged therein since the federal district court at present has exclusive jurisdiction thereof. That court cannot, directly or indirectly, or with or without the consent of the parties before it, vest in this court any jurisdiction of the subject matter.

## II.

Assuming, arguendo, that this court has jurisdiction of the subject matter of this proceeding, we think that we should decline to exercise it.

If, as indicated in the federal court's order (quoted above), the principal purpose in permitting the petitioner

to file a substantially identical petition for habeas corpus in this court is to ask us to decide whether he has failed to exhaust his state remedies with respect to the matters alleged therein pursuant to 28 U.S.C.A. § 2254, we should decline to answer the question, because we would be rendering an advisory opinion on a federal question.

No question of state law is involved in this case. In this state there are only two courts of record—the superior court (the trial court) and the Supreme Court (the only appellate court). When petitioner was tried and sentenced by the superior court and his sentence was affirmed after a hearing before this court, he filed a petition for rehearing in this court (which was denied March 13, 1963).[2] It seems to us that the federal district court now is in a position to decide on the record made in the state courts whether the petitioner has exhausted his state remedies. No opinion by this court is necessary.

On the other hand, if the federal district court desires further investigation as to the factual matters alleged in the petition before it, that court has power to hold an evidentiary hearing and make its own determination as to any facts bearing on the question of whether the petitioner has been deprived of any rights guaranteed him by the United States Constitution.

Another facet of this case which should be noted is that the petitioner has asked this court to enter an order of reference requiring the trial court to hold a factual hearing on certain issues raised in the petition and make findings of fact in respect thereto.

It is clear (as stated in Judge Hale's separate opinion herein) that we should not do so even assuming that we had jurisdiction to do so.

---

[2]The former additional prerequisite to the exhaustion of state remedies was the application to the United State Supreme Court for a writ of certiorari to review the judgment of the highest court of the state. See *Darr v. Burford,* 339 U. S. 200, 94 L. Ed. 761, 70 S. Ct. 587, which was expressly overruled in this point in *Noia.* As mentioned above, petitioner took this step and his petition for certiorari was denied by the United States Supreme Court.

In the case of *In re Horn v. State,* 52 Wn. (2d) 613, 328 P. (2d) 159, which was an original application to this court for habeas corpus, Horn had been convicted of murder in the first degree and was sentenced to life imprisonment. He contended that he had been coerced by fear, coercion, and threats of bodily injury to sign a confession, which was admitted in evidence over his objection. In that case, we did grant an order of reference to the superior court requesting that it take additional evidence and make findings on the coercion issue. Upon receipt of the findings, we considered them and denied relief on the ground alleged in the petition. The United States District Court for the Eastern District of Washington, upon Horn's subsequent petition to that court for habeas corpus, held an evidentiary hearing, and, upon its own findings, ordered Horn released permanently from the custody of the superintendent of the state penitentiary. See footnote 1, above.

The *Horn* case illustrates the futility of our delaying the functioning of the federal district court by granting an order of reference to the Superior Court of King County in the present case. Such a course would merely consume the time of state courts in an attempt to perform the functions of the federal district court, and would not in any way facilitate the final disposition of this matter by the only court which is competent to decide the issues.

In support of his motion, petitioner cites *Noia* and *Sain.* As we have endeavored to point out in part I of this opinion, the cited decisions not only do not support petitioner's motion, but specifically hold that the federal district court has power to hold an evidentiary hearing to determine such issues. In our opinion, we should not delay the progress of this case by ordering the trial court to duplicate the functions of the federal district court.

On the oral argument, the petitioner's counsel stated that the federal district court had permitted him to file his petition in this court (upon stipulation of counsel) as a matter of comity between state and federal courts.

We are unable to see that comity has anything to do with the present situation. As pointed out in Judge Hale's sepa-

rate opinion, this court long ago completed its functions in regard to this controversy. The petitioner invoked the jurisdiction of the federal district court pursuant to 28 U.S.C.A. § 2241, *et seq.* That court accepted jurisdiction of the proceeding and still retains jurisdiction "subject to the further order" of that court. It has also stayed the execution of this court's judgment "pending further order" of that court.

The doctrine of comity simply requires that, where two courts have jurisdiction of a particular controversy, the first court to assume jurisdiction shall be permitted to completely dispose of it without interference from the other court. The doctrine does not mean that a federal district court which has taken jurisdiction of a controversy may grant permission to the litigants to transfer the case to the highest court of a state so that that court may perform part of the former's functions or to refer the matter to a state trial court for that purpose.

If comity could conceivably have any application here, it can only mean that this court should refrain from making any decision on the merits and should decline to render an advisory opinion while the controversy is pending in a court of competent jurisdiction.

It is possible, under our separate federal and state judicial systems, to bounce a criminal case back and forth between them for 11 years. The *Chessman* case is a prime example.[3] In the *Chessman* case there was a special prob-

---

[3]Chessman was tried beginning in the state trial court on April 11, 1949. Thereafter followed a long list of proceedings in the form of appeals, repeated applications for habeas corpus, and writs of certiorari. Only some of these were officially reported. They are as follows, in chronological order: *People v. Knowles* (and Chessman), 35 Cal. (2d) 175, 217 P. (2d) 1 (1950), *cert. den. Knowles (Chessman) v. People,* 340 U. S. 879, 95 L. Ed. 639, 71 S. Ct. 117 (1950); *People v. Chessman,* 35 Cal. (2d) 455, 218 P. (2d) 769, 19 A.L.R. (2d) 1084 (1950); *People v. Chessman,* 38 Cal. (2d) 166, 238 P. (2d) 1001 (1951), *cert. den.* 343 U. S. 915, 96 L. Ed. 1330, 72 S. Ct. 650, *rehearing den.* 343 U. S. 937, 96 L. Ed. 1344, 72 S. Ct. 773 (1952); *Chessman v. People* (of State of California), 205 F. (2d) 128, *cert. den.* 346 U. S. 916, 98 L. Ed. 412, 74 S. Ct. 278, *rehearing den.* 347 U. S. 908, 98 L. Ed. 1066, 74 S. Ct. 430 (1954); *In re Chessman,* 43 Cal. (2d) 296, 273 P. (2d) 263 (1954); *In re Chessman,*

lem, namely the reproduction of a trial record adequate for purposes of appeal from the unusual shorthand notes of a trial-court reporter who had died before he completed his transcription. The case's collateral and nonjudicial aspects were well advertised by all types of news media. The case was a thorn in the side of both the federal and state judiciary, mainly because of the deference the federal courts tried to pay to the state courts (regarding the trial record and additional state court hearings). Much of the delay in that case could have been avoided if the federal district court had held evidentiary hearings and had determined the factual issues in 1950 as it finally did in 1956. (See footnote 3.)

As Judge Goodman stated in *In re Chessman,* 128 F. Supp. 600, 602 (N.D. Cal. S.D., 1955), after noting the prior numerous proceedings in state and federal courts:

"When does the wheel stop turning? What must the citizen think of our 'nickel in the slot' administration of criminal justice? The court would be fully justified in refusing to consider the present petition as repetitious [of prior proceedings] . . . ."

We do not suggest that petitioner in the present case is using the judicial tactics similar to those of Mr. Chessman, but we do think that this court should note the similarity of the various proceedings involving the petitioner in the

43 Cal. (2d) 391, 408, 274 P. (2d) 645 (1954); *cert. den.* 348 U. S. 864, 99 L. Ed. 681, 75 S. Ct. 85 (1954); *In re Chessman,* 128 F. Supp. 600 (N.D. Cal. S.D. 1955) (In its statement of facts, the opinion notes *four* prior unreported denials of federal habeas corpus, dating March 17, 1950, December 4, 1950, November 6, 1951, and June 9, 1952), *appealed; In re Chessman,* 219 F. (2d) 162, *affirmed* 221 F. (2d) 276 (C.A. 9th), *reversed* 350 U. S. 3, 100 L. Ed. 4, 76 S. Ct. 34 (1955); *In re Chessman,* 44 Cal. (2d) 1, 279 P. (2d) 24 (1955). (This was a state habeas corpus application started after the federal habeas corpus reported in 128 F. Supp. 600 was denied, but before the appeal was completed on the federal habeas corpus.); *Chessman v. Teets,* 138 F. Supp. 761, *affirmed* 239 F. (2d) 205 (C.A. 9th), *vacated* 354 U. S. 156, 1 L. Ed. (2d) 1253, 77 S. Ct. 1127 (1956); *Chessman v. Superior Court,* 50 Cal. (2d) 835, 330 P. (2d) 225 (1958); *People v. Chessman,* 52 Cal. (2d) 467, 341 P. (2d) 679, *cert. den.* 361 U. S. 925, 4 L. Ed. 241, 80 S. Ct. 296 (1959); *cert. den.* 362 U. S. 965, 4 L. Ed. 879, 80 S. Ct. 883 (1959); *Chessman v. Dickson,* 275 F. (2d) 604 (C.A. 9th, 1960).

courts of this state and those involved in the early *Chessman* proceedings. It seems to us that the only way to settle the issues raised by the petitioner once and for all is in *one direct* and *complete proceeding* in the *only* court with the final authority to hold the necessary hearings and decide the questions of fact and law, namely the federal district court, whose jurisdiction of the petition was invoked on March 25, 1964.

As indicated above, we are constrained to dismiss the petition before us for lack of jurisdiction of the subject matter. In the alternative, assuming jurisdiction, we must decline to give the petitioner a purely advisory opinion as to whether he has exhausted his state remedies.

The petitioner's petition filed herein August 17, 1964, is hereby dismissed.

HILL, WEAVER, and OTT, JJ., concur.

ROSELLINI, C. J., concurs in the result.

HAMILTON, J. (concurring)—I concur in the dismissal of the present petition for a writ of habeas corpus. I cannot, however, concur in or subscribe to all of the reasons given therefor by either Judges Donworth or Hale. My reasons, briefly, are:

(1) Petitioner, by his allegations in support of his application for a writ of habeas corpus, raises primarily federal questions; that is, he asserts substantial infringements of rights guaranteed by the United States Constitution.

(2) While we have jurisdiction and responsibility, in common with the federal courts, to determine such questions in appropriate direct or collateral proceedings, petitioner has, by his pending petition in the United States District Court, sought to invoke the jurisdiction of the federal judiciary.

(3) The rule of exhaustion of state remedies, as propounded in 28 U.S.C.A. § 2254, does not, in my opinion, require petitioner, after exhausting his state appellate remedies, to repeatedly challenge the judgment and sentence

by a series of collateral attacks in state courts before being entitled to invoke the jurisdiction of the federal courts. See *McBee v. Bomar,* 296 F. (2d) 235 (6th Cir. 1961); *In re Thompson's Petition,* 301 F. (2d) 659 (3d Cir. 1962); *Mills v. Tinsley,* 314 F. (2d) 311 (10th Cir. 1963); *United States ex rel. Everett v. Murphy,* 329 F. (2d) 68 (2d Cir. 1964).

(4) The federal court, since its jurisdiction has been invoked, may conduct its own evidentiary hearing if it be dissatisfied with the evidentiary hearings heretofore afforded by the state. *Fay v. Noia,* 372 U. S. 391, 9 L. Ed. (2d) 837, 83 S. Ct. 822 (1963); *Townsend v. Sain,* 372 U. S. 293, 9 L. Ed. (2d) 770, 83 S. Ct. 745 (1963).

With these thoughts in mind, it appears to me that comity strongly suggests, if it does not demand, that we defer to the invoked jurisdiction of the federal court and allow it to proceed with its disposition of the petition before it without the intervention or delay of additional state court hearings. Neither society, the orderly administration of criminal justice, nor the dignity of the state and federal judicial systems stand to gain by an Alphonse and Gaston approach in bouncing the "evidentiary hearing ball" back and forth. Only delay, duplication, and disrespect for our system of justice can result.

█ I would, accordingly, deny the request for an order of reference and dismiss the petition now pending before us.

HALE, J. (separate opinion concurring in the result)— I concur in the result reached by the majority but not the thesis on which it rests. Recognizing full well the clarity and strong intellectual force with which Judge Donworth has delineated the majority opinion, I must, nonetheless, take issue with its fundamental concept that the Supreme Court of Washington lost jurisdiction of this petition in habeas corpus when petitioner filed a similar petition with the District Court of the United States. I believe that so deeply rooted is the jurisdiction of the Supreme Court of Washington in habeas corpus that it can be divested only by the Supreme Court of the United States in entertaining

a similar petition concurrently or by staying our consideration of the petition on appeal or certiorari.

The Supreme Court of Washington derives its powers from the organic law as set forth in the Constitution of the United States, the Constitution of the State of Washington, and by inheritance from the common law. Under the federal constitution, this state entered the Union by means of the Enabling Act (25 Stat., chapter 180), with explicit power in habeas corpus written into its basic law through Article 4 of the Washington State Constitution—a judicial power which found broad confirmation in the Supremacy Clause of the United States Constitution.

Thus, this state became an integral part of the Nation under a constitution which fixes not only jurisdiction in but places a duty upon the Supreme Court of Washington to hear and determine proceedings in habeas corpus. Article 4, § 4 of the Washington State Constitution declares:

"The supreme court shall have original jurisdiction in *habeas corpus* . . ." (Italics mine.)

The same section confirms power in habeas corpus twice more in the following language:

". . . The supreme court shall also have power to issue writs of mandamus, review, prohibition, *habeas corpus,* certiorari and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court of the state or any judge thereof." (Italics mine.)

I would conclude, therefore, that our jurisdiction to hear this proceeding in habeas corpus persists until finally determined.

But, in my disagreement with the majority's view that the filing or pending of a petition for habeas corpus in a district court of the United States divests the Supreme Court of the state of jurisdiction, I do accept the majority's ultimate conclusion that this court can grant no relief to petitioner in

the premises. Considering the petitions for habeas corpus and for an order of reference on their merits and in conjunction with the proceedings that have gone before, I think it manifest that Don Anthony White has exhausted all of his remedies in this forum. A detailed recital of the steps taken by petitioner, or which being readily available to him could have been taken, shows, I think, that he has no further remedies to pursue before the Supreme Court of Washington.

Here is a record of proceedings:

Don Anthony White, now confined in the state penitentiary at Walla Walla under a judgment and sentence of death entered July 18, 1960 by the Superior Court of the State of Washington for King County, filed this petition for a writ of habeas corpus August 17, 1964. He informs us in his petition that, on May 6, 1964, he filed and now has pending in the District Court of the United States for the Eastern District of Washington, Southern Division, a petition for habeas corpus directed against respondent here, challenging the validity of the same judgment and sentence.

Respondent filed his return and answer August 26, 1964, to the petition now before us. Before hearing could be had in this court on the issues thus joined, petitioner additionally filed with us a petition for an order of reference requesting this court to direct the Superior Court for King County to conduct a hearing and receive evidence concerning events said in the petition to have occurred in connection with the arrest and interrogation of the petitioner prior to his being formally charged with the crimes whereof he is now convicted and for which he is awaiting execution. Through counsel, he applied to us for a continuance of the hearing on the petition for order of reference, and it was granted. Both the petition for habeas corpus and the petition for order of reference come before us en banc pursuant to the continuance.

In my opinion, if the order of reference lies, the petition for habeas corpus may warrant further hearing. If, however, the petitioner has no further remedies available to him under the laws of this jurisdiction, then the petition for

an order of reference ought to be denied and the petition for habeas corpus should thereupon be dismissed.

The only question raised by the two petitions is: Has the petitioner exhausted his remedies under the laws of this state, or, expressed otherwise, is there yet available to the petitioner any further proceedings which he may bring before the tribunals of the state of Washington under the constitution or laws of the United States, the constitution and laws of the state of Washington, or the common law by which he may now question the validity of the judgment and sentence under which the death penalty is to be inflicted upon him. The purpose here is to examine into the whole record of proceedings to ascertain what remedies, if any, remain to the petitioner.

By information filed January 7, 1960, the prosecuting attorney of King County charged petitioner in two counts with the murder in the first degree of Alice Jumper on December 24, 1959, and with the murder of Willie LeRoy Dixson as a separate crime committed on the same day. Capable and experienced counsel were appointed by the court to serve defendant at public expense.

On petitioner's behalf, on January 22, 1960, counsel entered a special plea of mental irresponsibility asserting that he was mentally irresponsible at the time of the commission of the crimes charged and that such mental irresponsibility continued; petitioner also entered general pleas of not guilty to each of the two counts.

Issues raised by the information, the pleas of not guilty and the special plea of mental irresponsibility came on regularly for trial May 16, 1960, in the Superior Court of the State of Washington for King County before a jury—two deputy prosecuting attorneys appearing for the state and two attorneys appearing for the petitioner. The trial court submitted the case to the jury May 26, 1960, at 9:48 p.m. That the petitioner was granted ample time and opportunity to raise all questions, and to point out any errors occurring or claimed to have occurred before, at or during trial, and to assert all constitutional rights, privileges and immunities, may be seen from a reading of the statement of facts—a

verbatim transcript and report of everything said or done by the court, jurors, witnesses and counsel—running to 1454 pages in length.

The jury received the case for its deliberations May 26, 1960, at 9:48 p.m., and the following day, May 27, 1960, at 3:40 p.m., returned a verdict of guilty of murder in the first degree as charged in count 1 of the information, and guilty of murder in the second degree as charged in count 2 of the information, and a special verdict that the death penalty be inflicted. A poll of the jury taken in open court confirmed the several verdicts to be the individual verdicts of each juror and the unanimous verdict of the jury. I find nothing in the record nor was any claim made by petitioner that he was not allowed ample time and opportunity to prepare his defense; nor were any avenues closed to him by which he might raise any questions he deemed advisable under either the federal or state constitutions, or the statutory or common law; nor was he at any time during the trial foreclosed from or his opportunities abridged in noting objections to evidence or in presenting matters of law to the judge presiding and to receive a ruling thereon.

May 31, 1960, through his counsel, petitioner filed formal motion in arrest of judgment or in the alternative for a new trial, challenging, *inter alia*, the sufficiency of the evidence, urging error in the giving and refusal to give offered instructions, misconduct of the jury, newly discovered evidence, accident and surprise, errors of law occurring at the trial, that the verdict was contrary to the law and the evidence, that substantial justice was not done, and that the jury received evidence not allowed by the court. Petitioner moved for and the court allowed an extension of time for the filing of briefs in support of his motions in arrest of judgment and for a new trial to June 30, 1960. Whereupon, after considering written briefs and upon oral argument relating to the motions, the court denied the motions on July 18, 1960. Thereupon, in open court, in the presence of petitioner and his counsel, the judgment and sentence of death was pronounced by the court upon petitioner on the verdict and special verdict relating to count 1, and a judgment

and sentence of life imprisonment on count 2, with the death sentence to have precedence over the life imprisonment.

Petitioner filed timely notice of appeal from the judgment and sentence, and in pursuance thereof there was prepared for petitioner, at public expense, a complete statement of facts showing everything said and done at the trial. Petitioner, through counsel filed a praecipe for a transcript on appeal, directing all minute entries, exhibits, pleadings, papers, and orders filed in connection with the case—with a few exceptions designated by petitioner—be sent to the Supreme Court of the State of Washington as a part of the record on appeal. The transcript on appeal runs to 304 pages. I find nothing to indicate that the petitioner was in any way limited or disparaged in his designation of the record on appeal or that the record on appeal is other than in accordance with his choice and designation.

Petitioner perfected his appeal, filing his brief urging 11 separate assignments of error, and it came on regularly to be heard by this court en banc upon written briefs and oral argument. On September 25, 1962, this court, being the highest court in the state, in a formal written opinion, affirmed the trial court and the judgment and sentence. *State v. White,* 60 Wn. (2d) 551, 374 P. (2d) 942. Thereafter, petitioner regularly petitioned this court for a rehearing of his appeal. The court, through its Chief Justice, directed the respondent state to file an answer thereto, and then, having considered the petition for rehearing and the arguments made in support and opposition thereto, denied the petition for rehearing on March 13, 1963.

Following denial of the petition for rehearing, petitioner, on May 17, 1963, filed with this court his praecipe requesting that we certify and send to the Supreme Court of the United States all essential records pertaining to his trial, the judgment and sentence, and appeal. We ordered compliance and sent forward all transcripts of the record and evidence so designated by petitioner to accompany his petition for review by that court by writ of certiorari of his conviction and sentence. October 21, 1963, the Supreme

Court of the United States denied the petition for certiorari and sent a copy of its order so doing to this court. *White v. Washington,* 375 U.S. 883, 11 L. Ed. (2d) 113, 84 S. Ct. 154. Since *Darr v. Burford,* 339 U.S. 200, 94 L. Ed. 761, 70 S. Ct. 587 (1949), I am not sure that denial of certiorari by the Supreme Court of the United States to review the opinion and judgment of the highest tribunal of a state having jurisdiction in criminal cases is essential to the exhausting of state remedies. See: *Fay v. Noia,* 372 U.S. 391, 9 L. Ed. (2d) 837, 83 S. Ct. 822 (1963). But this point need not be considered in extenso for petitioner did petition for certiorari and the same was denied.

With the denial of certiorari by the Supreme Court of the United States, no further remedies remained to petitioner by which he might directly challenge the judgment and sentence. Any new attacks on the validity of the judgment must perforce be collateral. Proceeding collaterally then, petitioner, on February 21, 1964, filed in this court his petition for a writ of habeas corpus which we heard en banc, and subsequently, on March 19, 1964, denied in a formal published opinion. *In re White v. Rhay,* 64 Wn. (2d) 15, 390 P. (2d) 535.

There rests on the courts of the several states a duty to uphold the constitution of the United States and the acts of Congress made in pursuance thereto, a duty neither inferior nor secondary to the same obligation resting upon the federal judicial system. All courts, state and federal, bear with equal weight an obligation to provide remedies for violations of constitutional guarantees. *Fay v. Noia, supra.* That this is so comes not only from powers and duties necessarily implied or inherent, but rather from the express language of the constitution. In words designed to place the burden squarely and with equal weight on all courts, the constitution declares:

"...

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, *shall be the supreme law of the land; and the judges in every state shall be bound thereby,* any thing in

the Constitution or laws of any state to the contrary notwithstanding. . . ." (Italics mine.) U.S. Const. Art. 6.

I see in the supreme law of the land clause a categorical imperative placing upon all the courts in the nation a duty to secure to every person held to answer a criminal charge all of the rights, privileges and immunities guaranteed in the constitution of the United States. I take this clause to mean that all courts, state or federal, trial or review, of special or limited jurisdiction, are equally bound in their obligation to observe, uphold and apply the constitution.

That this is an equal and universal responsibility resting with equal weight upon all of the judges in the Nation may further be seen in that provision of the constitution which requires every court to give full faith and credence to the courts of every other state.

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. . . ." U.S. Const. Art. 4, § 1.

Should there be any doubt as to the universality of this doctrine, I suggest that this section applies equally to the federal courts, for the courts of the United States are bound to give the judgments constitutionally entered by state courts the same faith and credit that the courts of one state are bound to give to the courts of the other states. *Cooper v. Newell,* 173 U.S. 555, 43 L. Ed. 808, 19 S. Ct. 506 (1899); *Sutton v. Leib,* 342 U.S. 402, 96 L. Ed. 448, 72 S. Ct. 398, rehearing denied 343 U.S. 921, 96 L. Ed. 1334, 72 S. Ct. 674 (1950). A failure to heed the admonitory concepts contained in this section must inevitably lead to a kind of judicial anarchy in the prosecution of crime, a condition where a criminal case will never end, a state of things where the sovereign people have lost their power to enjoin, punish or rehabilitate the criminal offender, for none of these can be done if the judgment upon him never becomes final. See: *Fay v. Nöia, supra,* where 21 years after signing a coerced confession to murder, there being no appeal taken from the judgment of conviction and life sentence—possibly because a new trial may have resulted in the death penalty—the petitioner was set free on petition for habeas corpus.

Exhaustion of state remedies must mean remedies by which a judgment of conviction or errors in the trial may be challenged directly as distinguished from collateral attacks on the judgment of conviction, by habeas corpus or coram nobis or such other writs as may be discovered or invented. If, by exhaustion of state remedies something else is meant to include collateral attacks, the term becomes meaningless, for habeas corpus is said not to be subject to the doctrine of res judicata. *Darr v. Burford, supra; Fay v. Noia, supra.* And, before the ink is dry on an order denying one petition, another may be filed and be deemed pending. So it may go, one petition after another, ad infinitum.

What then are the remedies which ought to be available to one accused of crime in the state courts which are said to be exhausted in a case such as this? When one has been accorded a public trial by a constitutionally selected jury; represented by competent counsel at public expense; afforded the power of subpoena; free to testify or not as he chose; allowed freedom of cross-examination; given ample time and opportunity to prepare his defense; and at all times free to bring to the judge's attention any claims of error in law or occurrences during or preceding the trial which tend to deprive him of either a fair trial or due process of law and to have these assertions of error or impairment of due process considered and ruled upon by the judge presiding, he has been afforded in large measure the remedies contemplated. Then, when to these are added the further remedies that, after verdict, one has been entitled, under the law of the forum, to consideration anew of all claims of error through motions in arrest of judgment or for a new trial, including reference to newly discovered evidence, and to have all matters going to the fairness of the trial and treatment preceding the trial heard and ruled upon by the trial judge, he has nearly exhausted his remedies. Finally, when to all of these remedies he has been granted the right of appeal to the highest court in the state having jurisdiction in criminal cases and has received from that court a review of all claims of error, it should be held that the opinion of the highest state court be considered the final

remedy. If there be any doubt on the point that the judgment of the highest court of appeal constitutes the last remedy, then it follows that the right to petition for a rehearing to the highest court must be the last and final remedy. Accordingly, when in considered judgment of the highest court the rehearing be denied, the petitioner has exhausted his remedies under the state law. Petitioner here, having pursued all of these remedies on a direct challenge to the judgment, and further having attacked the judgment collaterally by habeas corpus here, has no further remedies available. He has used every means by which to directly attack the judgment in the courts of this state.

▮   Accordingly, I would deny the petition for an order of reference; the petition for a writ of habeas corpus in the cause now pending before us being dependent upon the issuance of an order of reference should likewise be denied and dismissed.

ROSELLINI, C.J., concurs with HALE, J.

FINLEY, J. (dissenting)—In *State v. White*, 60 Wn. (2d) 551, 374 P. (2d) 942, I agreed with the dissenting views expressed by Hunter, J. Subsequently, in the matter of *In re White v. Rhay*, 64 Wn. (2d) 15, 390 P. (2d) 535, an application for habeas corpus, I dissented along with two other members of the court, and I expressed the view that a new trial should be granted.

The present application for habeas corpus raises substantial criminal due process questions not previously presented or passed upon by this court. The petitioner's counsel assert that they did not learn of the facts surrounding his interrogation and repeated confessions until April 1, 1964, in spite of thorough investigation before and during trial. Counsel assert that the discovery of these facts was delayed to that date because up to that point the petitioner's mental condition had prevented full communication on these circumstances.

The state counters these statements with the argument that these defenses were probably waived at trial. However. the state does seem willing to hold a factual hearing

to determine whether these defenses were discussed and knowingly waived by the petitioner. The applicable law seems clear:

". . . The classic definition of waiver enunciated in *Johnson v. Zerbst,* 304 U.S. 458, 464—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. *Price v. Johnston,* 334 U. S. 266, 291. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. Cf. *Carnley v. Cochran,* 369 U.S. 506, 513-517; *Moore v. Michigan,* 355 U.S. 155, 162-165. A choice made by counsel not participated in by the petitioner does not automatically bar relief. . . ." *Fay v. Noia,* 372 U. S. 391, 439, 9 L. Ed. (2d) 837 (1963).

While *Noia* was directed to the federal district courts, its summation of waiver principles applies with equal force in the state courts.

The concurring opinion herein by Hale, J., in effect assumes that these questions have been or would be resolved against the petitioner, and that ultimately it may be said that he waived the right to raise these questions in view of the theory of the defense and the manner in which the defense was conducted in the trial court. This is to me unacceptable. I believe that we are faced with a new issue, *i.e.,* whether there was "an intentional relinquishment or abandonment of a known right or privilege" which has been newly discovered by conscientious counsel. These issues should not now be glossed over or resolved categorically against the petitioner, or simply left to review and determination in the federal courts. The questions raised by peti-

tioner are properly before us by reason of the present petition for a writ of habeas corpus, and I believe this court should now evaluate and pass upon the questions raised. I refer to the questions raised in paragraphs VI and VII of the petition for a writ of habeas corpus, which read as follows:

"VI.    Petitioner was denied due process of law and the guarantees of the Fourteenth Amendment to the Constitution of the United States in the following particulars, to-wit:

"1.    Petitioner was arrested by the police on December 28, 1959, and there held in custody without advice or aid of counsel, or any other competent advice, until counsel was appointed for him on January 8, 1960.

"2.    Petitioner, following arrest, was not taken before a magistrate as required by RCW 10.16.010.

"3.    Prior to and during the time of confinement of your petitioner he was afflicted with a disease of mind, magnified by alcohol and drug, which weakened and diluted his resistance to the suggestions and questioning of the police to the extent that he was incapable, because of his physical and mental condition to intelligently and competently give any statement or confession that was voluntary or trustworthy.

"4.    Petitioner was held in police custody, and questioned over a period of eleven days before he was provided with counsel; and because of his weakened mental and physical condition during such custody, without counsel, and without having had a hearing before a magistrate, the entire circumstance of the police procedure was intimidating and coercive.

"5.    Because of the above and foregoing, all of the statements and purported confessions of petitioner while in custody, particularly statements made on December 28, 1959, and on January 6, 1960, which were admitted in evidence at trial, were involuntary and untrustworthy and therefore inadmissible.

"VII.    Petitioner was denied due process and the guarantees of the Sixth Amendment to the Constitution of the United States because he was not provided counsel when needed, and because his physical and mental condition was so debilitated and diseased that he could not intelligently or competently waive the right to counsel, about which he was not informed and which the record discloses, he knew nothing about.    The admissions and confessions of peti-

tioner, made without advice of counsel, and introduced at trial, violated petitioner's Sixth Amendment rights.

"1. The record discloses that petitioner was at no time advised that he did not have to give a statement, or to submit to interrogation, and there are no facts from which any inference can be drawn that petitioner knew or understood that he had a right to remain silent."

I cannot agree with the views of the majority herein, as expressed by Donworth, J., that exclusive jurisdiction has been vested in the United States Court for the Western District of Washington because of the filing therein of petitioner's application for a writ of habeas corpus on March 25, 1964. It may well be, as Donworth, J., points out, that, under the authority of 28 U.S.C.A. § 2241, *et seq.*, and pertinent decisions of the United States Supreme Court, the United States District Court in the final analysis may disagree with and in effect void any or all determinations reached by the Washington State Supreme Court respecting the questions raised in the petition presently on file in this court. However, it is my belief (a) that our jurisdiction *is at least a concurrent one* with that of the United States District Court in the present instance; (b) that as a state court of last resort we have a responsibility, indeed a duty, to function on the petition now filed in this court; and (c) that such judicial responsibility and duty is not met by passing the matter to the United States District Court for any reason I can think of or for the reasons stated by the majority and the dissenting opinions.

Apropos of the foregoing, it seems to me we should first consider and pass upon the question of whether there has been an effective waiver of the petitioner's due process rights now claimed in the present petition before this court. Our action as to an order of reference to the trial court could abide the foregoing determination. However, it seems to me that the taking of evidence relative to the claims asserted by petitioner may not only be desirable but vitally necessary for any appropriate judicial evaluation and disposition of the new matters or issues raised in the petition for habeas corpus filed here in relation to the original jurisdiction of the Supreme Court of the State of Washington

in such matters. To avoid further delay, to afford an appropriate, fair and just consideration and disposition of this petition, to meet and comply with our responsibility as a state court of last resort without deferring and passing this responsibility to the United States District Court. I would strongly favor the issuance forthwith of an order of reference for a prompt and full evidentiary hearing in the Superior Court of the State of Washington in and for King County. In my best judgment, it is only in this way that we can have before us an appropriate record for a disposition of the present petition, either for or against the petitioner. On the basis indicated and for the reasons set out, I must dissent as strongly as I know how.

HUNTER, J., concurs with FINLEY, J.