In the Matter of the Application for a Writ of Habeas Corpus of Don Anthony **WHITE**, Petitioner,

v.

**B. J. RHAY,** as Superintendent of Washington State Penitentiary at Walla Walla, Washington, Respondent.

No. 1940.

United States District Court E. D. Washington, S. D.

April 8, 1966.

Young, Hoff & Regan and Weyer, Sandelin, Sterne & Gaskill, Seattle, Wash.; and R. Max Etter, Spokane, Wash., for petitioner.

John J. O'Connell, Atty. Gen. of Washington, Olympia, Wash., for respondent.

## MEMORANDUM OF OPINION

FRED M. TAYLOR, District Judge.

Petitioner, Don Anthony White, has applied to this court for a Writ of Habeas Corpus as a result of his conviction on two counts of murder in the state courts of the State of Washington. Hearing on said petition was ordered by another Judge, who subsequently became incapacitated, and the undersigned was assigned to hear the matter. Pursuant to a stipulation of the parties a hearing was held on the petition in Seattle, Washington, from February 7th through February 9, 1966, at which time oral and documentary evidence was introduced on behalf of petitioner and respondent.

This court has jurisdiction to entertain the application under 28 U.S.C.A. § 2241. The applicant has unsuccessfully exhausted all available state court remedies as required by 28 U.S.C.A. § 2254

On January 7, 1960, the State of Washington, by way of an Information charged petitioner with having committed two homicides, the first count charged petitioner with first degree murder of Alice Jumper on December 24, 1959, and the second count with second degree murder of Willie Dixson on that same day. On January 8, 1960, petitioner was arraigned before the Superior Court of King County at Seattle, Washington, at which time the court appointed counsel to represent him. Petitioner entered a general

plea of not guilty to each count and subsequently, on January 22, 1960, petitioner, by and through his counsel, entered a special written plea alleging "that he was mentally irresponsible at the time of the commission of the crimes charged herein, and that such mental irresponsibility still continues." A jury trial was had on both counts in said Superior Court for King County from May 16 through May 27, 1960, and on the latter date, the jury returned a verdict of guilty on both counts recommending the death penalty on count one. Petitioner was thereafter sentenced to death on count one and to life imprisonment on count two. He unsuccessfully appealed to the Supreme Court of the State of Washington and his conviction was affirmed. State v. White, 60 Wash.2d 551, 374 P.2d 942. Subsequently, petitioner applied to the United States Supreme Court for a Writ of Certiorari and said petition was denied. White v. Washington, 375 U.S. 883, 84 S.Ct. 154, 11 L.Ed.2d 113. He then petitioned the Washington Supreme Court for a Writ of Habeas Corpus and this petition was denied. White v. Rhay, 64 Wash.2d 15, 390 P.2d 535. The application for a Writ of Habeas Corpus was then filed in this court. After a hearing on a motion to dismiss the petition, the Judge then assigned to this case ordered a stay of further proceedings in this court to enable petitioner to make another application for a Writ of Habeas Corpus to the Supreme Court of the State of Washington. A second application was made to said court and denied. White v. Rhay, 65 Wash.2d 711, 399 P.2d 522.

There is little or no conflict in the evidence concerning the arrest, custody and trial of the petitioner. He was arrested by a Seattle police officer on December 26, 1959, at approximately 11:00 P.M., for a crime unrelated to those with which he was subsequently charged in the Information. On December 28, 1959, at approximately 1:15 P.M. petitioner was placed in a police line-up with other persons having similar physical characteristics, at which time and place he was observed and identified by several witnesses. The following day he was again placed in a line-up and identified as the person who had pawned some of the dead woman's personal property. At approximately 3:30 P.M. following the first line-up, petitioner was interrogated by police officers. At this time a police officer prepared a written statement or confession in regard to the Dixson homicide which was signed by the petitioner. Later that same day petitioner was again interrogated by the police officer who prepared a written statement or confession regarding the Jumper homicide which was signed by the petitioner. A third statement was taken on January 6, 1960, in regard to petitioner's use of drugs and alcohol. All of the interrogations of petitioner by the police officer were secretly recorded by a concealed tape recorder in the interrogation room. The written statements or confessions signed by the petitioner in regard to the two homicides and the tape recordings so taken at the time the statements were prepared and signed were all admitted as a part of the State's evidence at the trial.

In the petition here there are twenty-one claims of unlawful conviction and sentence, many of which are overlapping. The court does not consider it necessary to separately deal with each of said claims. These claims have to do with the selection of the jury; how the death penalty in first degree murder cases is to be applied; the validity and application of the so-called "McNaughton Rule"; arrest procedures; and, the giving and failure to give certain instructions. This court has fully considered the record of the trial, pleadings and papers filed subsequent thereto, the decisions of the Supreme Court of the State of Washington on the various questions presented to it and the arguments and briefs of counsel presented in this matter. Except as hereinafter stated, this court is in agreement with the decisions of the Supreme Court of the State of Washington with respect to the questions presented in that court and here in regard to violations of the petitioner's constitutional rights.

In this case, the two principal and perhaps crucial questions which this court feels compelled to specifically discuss are whether petitioner's constitutional right to a hearing to determine his competency to stand trial was violated; and, whether certain of his rights were violated under the decision of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

It must be admitted that the conviction of an accused person while he is legally incompetent would violate due process and that state procedures must be adequate to protect this right. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 838, 15 L.Ed. 2d 815, decided March 7, 1966.

In this proceeding it is claimed that petitioner could not effectively assist in his defense at the trial, control his demeanor and attitude or be of assistance to counsel because of his mental condition. After reviewing the record of the trial and the evidence introduced at the hearing before this court and prior to the decision of the United States Supreme Court in Pate v. Robinson, supra, this court was of the opinion that this claim of the petitioner was without merit for the same reasons expressed by the State Supreme Court. However, since the Pate decision, this court has been persuaded to come to a different conclusion. The reason for this court's present opinion is based on the record as a whole. It must be noted and emphasized that the special written plea entered on behalf of petitioner prior to trial specifically alleged that he was then mentally irresponsible, a terminology which this court must construe to mean mentally incompetent. It is clear from the evidence at the trial and before this court that the petitioner came from a very dismal background of home environment and that he had been in a disturbed mental state from a relatively early age up until and during the trial. Expert psychiatric testimony revealed that he was in a disturbed state of mind at the time of the trial and, in addition, it was brought to the trial court's attention during the trial that petitioner's physical and mental condition were of considerable concern to his counsel. At the hearing before this court, the trial judge was called as a witness and freely admitted that he was concerned about the petitioner's attitude and awareness during the trial but testified that in his opinion petitioner did understand the nature of the proceedings and was capable of assisting his counsel in his defense. In the closing argument at the trial, counsel for petitioner emphasized the fact that petitioner was not only "sick" at the time of the commission of the crimes but he was equally so at that time. One of petitioner's counsel testified at the hearing before this court that he and his associate counsel were not actually aware of the degree of the petitioner's lack of competency at the time of the trial, but since that time, as a result of interviews and more psychiatric evaluation, it became clear that he was incompetent to stand trial. Expert testimony at the hearing indicates that there might be a real doubt as to petitioner's ability to aid his counsel in his defense at the time of trial. In this regard considerable weight should be given to a letter written by the trial judge to the Governor of the State of Washington (Petitioner's Exhibit No. 2) in which the Judge compares and contrasts the behavior and demeanor demonstrated by the petitioner at the time of the trial and at a later time. In this letter, the Judge stated:

"If Don Anthony White had appeared before the jury at the time of his trial in 1960 in the same manner, and with the same appearance of mental and emotional stability, and manifesting a genuine concern for the welfare of others, I cannot imagine that the jury would have prescribed the death penalty."

In determining whether petitioner should have had a hearing to determine his competency to stand trial, this court must consider the statements of the trial judge in conjunction with all other evidence offered in connection with

petitioner's mental responsibility. Taking into consideration all of these factors, including the special plea of the petitioner, it seems fair and reasonable that some type of a hearing should have been held prior to or sometime during the trial proceedings. In the recent case of Pate v. Robinson, supra, the Supreme Court of the United States held that a hearing in regard to competency to stand trial is dictated by the facts of the case. The facts in the Pate case are quite analogous to those here and in light of that case, this court is constrained to hold that it should have become apparent to all parties concerned that the competency of petitioner to stand trial was very much in issue and that a hearing should have been held to resolve the question. The failure to provide for such a hearing in this case deprived him of a constitutional right. The trial was not an adequate substitute for a hearing to determine petitioner's competency to stand trial. It was stated in Pate v. Robinson, supra, as follows:

"We believe that the evidence introduced on Robinson's behalf entitled him to a hearing on this issue. (competency) The court's failure to make such inquiry thus deprived Robinson of his constitutional right to a fair trial. (Citation omitted.) * * * The Supreme Court of Illinois held that the evidence here was not sufficient to require a hearing in light of the mental alertness and understanding displayed in Robinson's 'colloguies' with the trial judge. (Citation omitted.) But this reasoning offers no justification for ignoring the uncontradicted testimony of Robinson's history of pronounced irrational behavior. While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. (Citations omitted.) * * * "

This court is of the opinion that since the factual circumstances here are very similar to those in the Pate case, the principles adhered to there are applicable here. The court is not unmindful of the fact that this case, like Pate, has been long in the procedural process, but this fact does not preclude petitioner from having his constitutional rights. It is most difficult, if not impossible, to have a separate competency hearing at this late date in an attempt to determine petitioner's competency at and during the original trial. Having concluded that White's constitutional rights were abridged by his failure to receive an adequate hearing on his competency to stand trial, this court must direct that a Writ of Habeas Corpus issue and White discharged, unless the State of Washington gives him a new trial within a reasonable time, not to exceed one hundred twenty days from the date the judgment made and filed herein becomes final.

Having thus determined the claim of petitioner as to his competency to stand trial, it is unnecessary to resolve the claim arising under the principles announced in Escobedo v. State of Illinois, supra. Nevertheless, it does appear that this claim may have merit. The evidence introduced at the hearing before this court, reveals that at the time petitioner gave his statements or confessions, he was not acting as a result of force, coercion or duress. However, it is clear that petitioner was not advised or knew of his right to counsel or of his right to remain silent, either before or during the interrogations, and that whatever he said or signed might be used as evidence against him. The petitioner did not request the right to obtain counsel nor was he asked if he desired counsel, either before or during the interrogations. It is urged by respondent that at the time the petitioner was interrogated, the investigation had not shifted from the investigatory to the accusatory stage and that the focus of the investigation was not on the petitioner as an accused person. In so contending, respondent is attempting to circumvent the holding in Escobedo. The language in Escobedo provides, in part, as follows:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular

suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' (Citation omitted), and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (378 U.S. 491, 84 S.Ct. 1765.)

The evidence at the hearing before this court reveals that the investigation had probably shifted to the accusatory stage prior to the time the statements or confessions were given. One of the interrogating officers testified that he thought White could be a suspect at the time of the police line-ups and that this was the reason he was included in them. He also stated that White was the only possible suspect in said line-ups. Three people had identified the petitioner at the first line-up prior to the interrogations in regard to the homicides. It seems unreasonable to conclude that the investigation had not shifted from the investigatory to the accusatory stage at the time the statements or confessions were made. Respondent also contends that counsel for petitioner did not object to the admission of either of the statements or the recordings on the ground that they were involuntary and that because of this petitioner waived his rights. It is claimed that on this basis, counsel for petitioner deliberately by-passed the orderly state procedure and therefore forfeited any remedy the petitioner may have had.

Under the circumstances of this case, this court cannot agree with such contention. The record indicates that petitioner's counsel did object to the admission of the statements and recordings and while those objections might have been more specific in nature, it is the opinion of this court that such objections did adequately embrace valid grounds.

Respondent also contends that even if the record indicates that petitioner's "so-called" Escobedo rights were violated, that the decision should not be applied retrospectively. Obviously, this question need not be answered at this time inasmuch as the court has already determined the petitioner is entitled to another trial because he was deprived of his right to a competency hearing. In light of the recent decisions of the Supreme Court, e. g., Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, and Tehan v. United States, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, it would appear that respondent's contention might be correct. However, the Supreme Court has yet to decide whether the principle announced in Escobedo shall be applied retrospectively. Since that Court stated in Linkletter and Tehan that "we are neither required to apply, nor prohibited from applying a decision retrospectively," it would be mere conjecture for this court to state what the rule may ultimately be in regard to the retrospective application of Escobedo. In any event, due to the court's decision in this case, it will refrain from hazarding a guess in regard to whether the decision in Escobedo should or should not be applied retrospectively.

Counsel for the petitioner shall prepare Findings of Fact and Conclusions of Law, a proposed Judgment, serve copies of the same on counsel for the respondent and submit the originals to the court.