[No. 37930.    En Banc.    March 17, 1967.]

*In the Matter of the Application for a Writ of Habeas Corpus of* ELZIE SCRUGGS, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*\*

\*Reported in 425 P.2d 364.

*Francis Conklin,* for petitioner.

*The Attorney General, Stephen C. Way* and *Dennis G. Seinfeld, Assistants,* for respondent.

FINLEY, C. J.—This is an application for a writ of habeas corpus by Elzie Scruggs, who is presently incarcerated at the Washington State Penitentiary at Walla Walla.

The factual and procedural background of the instant petition is somewhat complex. Thus, a somewhat lengthy factual narration is necessary for an understanding of the problem involved and the reasons underlying our decision to issue the requested writ of habeas corpus.

On June 7, 1962, the petitioner was convicted on a charge of shoplifting and sentenced to serve 20 days in the Seattle City Jail. He was assigned to a cell with four other prisoners: George Birch, Less Roberts, Guy Hill and Nick Sampson. Shortly after being placed in the cell, the petitioner was awakened and ordered to stand in the hallway while the police conducted a routine shakedown of several jail cells and the inmates. The search was precipitated when, according to the police, one inmate was discovered to be "high" from the use of narcotics. During the course of the officers' search, the petitioner was ordered to remove his clothes. When he did so, one of the officers found a red capsule in the petitioner's pocket and a yellow capsule in

the cuff of his trousers. Upon subsequent analysis, the red capsule was found to contain heroin and the yellow capsule was found to contain Nembutal.

On August 23, 1962, the petitioner was charged by information with the crime of unlawful possession of narcotics. After being called for arraignment, petitioner was granted time to plead. On August 27, 1962, Mr. Bradford A. Caffrey was appointed by the court to represent the petitioner. The petitioner subsequently entered a plea of "not guilty," on August 31, 1962. He was tried and found guilty as charged by a jury on March 5, 1963, before The Honorable James W. Mifflin, Judge of the King County Superior Court. On March 7, 1963, the petitioner filed a motion for a new trial, supported by three affidavits. The affidavit of his court-appointed counsel indicated that a diligent effort had been made by the affiant to locate Nick Sampson, cellmate of the petitioner and a witness of the events involved, at the Seattle City Jail; but that counsel had been unable to locate this witness until after the case went to the jury. The affidavit further indicates that Mr. Sampson would have testified to the effect that he saw the petitioner "beat up" by the police during the course of their search for narcotics. Counsel's affidavit also indicates that the defendant would take the stand in his own behalf if granted a new trial, and would testify as to the alleged beating. The second affidavit, one filed by Mr. Scruggs, indicates that he would testify as averred in the affidavit of his counsel. A third affidavit—another by Nick Sampson—indicated that he would freely testify to certain events which would corroborate substantially Mr. Scruggs' allegation of police brutality.

The motion for new trial was denied by the trial judge. On March 8, 1963, the petitioner was sentenced to a maximum term of not more than 20 years in the state penitentiary. The Parole Board fixed the minimum duration of confinement at 10 years, and petitioner is presently serving his sentence in the Washington State Penitentiary. It

should be noted that there was no notice of appeal from the original judgment and sentence.

The petitioner first applied for a writ of habeas corpus in this court on December 23, 1963, alleging, inferentially, that the narcotics had been planted on his person by a police officer; and further stating, as grounds for the petition, that the absence of material witnesses who would have allegedly testified to the "non-existent" crime necessitates a new trial for the petitioner. The respondent, the state of Washington, demurred to this first petition on the ground that the petition did not state facts sufficient to constitute a claim for relief in habeas corpus proceedings. This demurrer was sustained by an order of this court dated March 9, 1964.

The petitioner filed a second application for a writ of habeas corpus in this court on April 17, 1964. In a letter dated May 20, 1964, the Clerk of the Supreme Court informed the petitioner that, on the same date, the Chief Justice had denied his petition to proceed in forma pauperis in seeking a writ of habeas corpus for the reason that the second petition raised the same issues as the first petition, which had been denied by the court.

On May 28, 1964, the petitioner filed a new application for a writ of habeas corpus in the United States District Court for the Eastern District of Washington. The principal ground stated in the application is the denial of petitioner's constitutional right to have witnesses appear in his behalf. The return and answer by the state of Washington indicated that the Washington State Supreme Court had considered all aspects of petitioner's case in Cause No. 37439, and on that basis had sustained the state's demurrer and denied the writ. On August 28, 1964, after a hearing, the United States district judge entered an order holding the petitioner's federal application in abeyance until the Washington State Supreme Court could have an opportunity to consider the factual issues raised by petitioner Scruggs. Obviously, the federal judge concluded that our two prior adverse rulings on applications for writs of ha-

beas corpus by Elzie Scruggs were not based upon the same considerations raised by the petition then before his court.

The petitioner then made a third application for a writ of habeas corpus to this court on September 26, 1964, requesting that a writ be granted; or, in the alternative, that Cause No. 37439 (the original application for a writ of habeas corpus in which we sustained the state of Washington's demurrer on March 9, 1964,) be re-opened. The grounds for relief are stated as follows:

IV.   Further your petitioner deposes and says:

A. that there is pending in the United States District Court for the Eastern District of Washington, Southern Division, a petition for Federal Habeas Corpus, H. C. 1965.

B. that upon the suggestion of the Honorable Judge Charles Powell, your petitioner is requesting the State Courts to determine the Federal constitutional issue in this cause.

C. that the issues raised in this petition are:

1. whether your petitioner was denied compulsory process of witnesses in his trial
2. whether a coerced confession was introduced at petitioner's trial in King County, State of Washington, in violation of petitioner's rights secured by the Fifth and Fourteenth Amendments to the United States Constitution. And Petitioner alleges that de facto such a confession was introduced.

An "Amended Petition in Forma Pauperis," filed on November 9, 1964, states as grounds for relief substantially the same matters as those quoted above.

Initially, there is some question as to whether we can or should reach the merits of petitioner's contentions. Basically, the question is whether the assumption of jurisdiction by a federal district court in a habeas corpus matter is exclusive, and preempts any power on the part of state courts to hear and determine, in a habeas corpus context, any aspect of a matter then before the federal courts.

We are convinced that it was not the intent of Congress, in enacting the federal statutory provisions govern-

ing habeas corpus procedure, 28 U.S.C.A., § 2241, *et seq.,* to create exclusive jurisdiction in the federal district courts once a state-convicted defendant initiates federal habeas corpus proceedings. The pertinent portion of 28 U.S.C.A., § 2254, reads to the contrary:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, *if he has the right under the law of the State to raise, by any available procedures, the question presented.* (Italics ours.)

It would be an abnegation of the constitutional and statutory responsibility of this court to refuse to consider questions raised by petitions for habeas corpus which have not been previously determined. Const. art. 4, § 4, and RCW 7.36.140. Furthermore, federal issues have always been litigated in state tribunals as well as in the federal courts, subject, of course, to the paramount authority of the United States Supreme Court. *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264 (1824); *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304 (1816). *Fay v. Noia,* 372 U.S. 391 (1963), is indicative of conviction on the part of the United States Supreme Court that Congress intended the jurisdiction of United States District Courts to be *concurrent* with the jurisdiction of state courts at all stages of the state criminal process:

> In thus extending the habeas corpus power of the federal courts evidently to what was conceived to be its constitutional limit, the Act of February 5, 1867, clearly enough portended difficult problems concerning the relationship of the state and federal courts in the area of criminal administration. Such problems were not slow to mature. Only eight years after the passage of the Act,

Mr. Justice Bradley, sitting as Circuit Justice, held that a convicted state prisoner who had not sought any state appellate or collateral remedies could nevertheless win immediate release on federal habeas if he proved the unconstitutionality of his conviction; although the judgment was not final within the state court system, the federal court had *the power* to inquire into the legality of the prisoner's detention. *Ex parte Bridges, supra* [2 Woods 428, 432 (Cir. Ct. N.D. Ga. 1875)]. Accord, *Ex parte McCready, supra* [1 Hughes 598 (Cir. Ct. E.D.Va. 1874)]. This holding flowed inexorably from the clear congressional policy of affording a federal forum for the determination of the federal claims of state criminal defendants, and it was explicitly approved by the full Court in *Ex parte Royall,* 117 U.S. 241, 253, a case in which habeas had been sought in advance of trial. The Court held that even in such a case the federal courts had the *power* to discharge a state prisoner restrained in violation of the Federal Constitution, see 117 U.S., at 245, 250-251, but that ordinarily the federal court should stay its hand on habeas pending completion of the state court proceedings. *This qualification plainly stemmed from considerations of comity rather than power, and envisaged only the postponement, not the relinquishment, of federal habeas corpus jurisdiction, which had attached by reason of the allegedly unconstitutional detention and could not be ousted by what the state court might decide.* (Italics ours.) 372 U.S. 417-418.

We are persuaded that the federal habeas corpus authority or jurisdiction is concurrent, not exclusive. Of course, we could decline to exercise such authority, power, or jurisdiction, if the same constitutional or factual issues had been previously raised, and determined, by this court.

Our decision to reach the merits in the instant case does not require an overruling of *In re White v. Rhay,* 65 Wn.2d 711, 399 P.2d 522 (1965). Only four judges of this court, at that time, subscribed to the theory that the federal court has exclusive jurisdiction, once it assumes jurisdiction by entertaining a petition for habeas corpus. 65 Wn.2d at 711-720. (Donworth, Hill, Weaver and Ott, JJ.) As an alternative ground, these same four judges felt that, even assuming arguendo the existence of concurrent jurisdiction

762

with the federal court, this court should decline to exercise its jurisdiction as a matter of comity. 65 Wn.2d at 720-725. The concurring opinion by Hamilton, J., likewise rests on comity principles, but expressly notes the existence of concurrent jurisdiction. 65 Wn.2d at 725-26. The remaining four judges (Hale, Rosellini, Hunter and Finley, JJ.) found this court to have concurrent jurisdiction, but they reached differing conclusions on the merits of petitioner's case.

Turning now to the merits in the instant matter, petitioner's application asserts: (1) that his clothing was removed, and he was forced to lie naked on his stomach on the floor of a hallway in the city jail; (2) that his feet were spread apart, and that police officers stamped on his ankles in an attempt to make him confess to the crime charged; (3) that a Mr. Sampson, a fellow inmate, witnessed this, and would have so testified if he had been available at the trial; (4) that petitioner requested his attorney to compel the attendance of witness Sampson at the trial; (5) that this was not accomplished, and resulted in denial of constitutional rights and prejudice to petitioner at his trial. An affidavit of Mr. Bradford Caffrey, court-appointed counsel for the petitioner, is inconclusive on this latter point. On information and belief, it states that an oral motion was made respecting compulsory attendance of witness Sampson, but that affiant's memory is unclear as to whether such motion was made and was pertinent to the trial or was made thereafter in connection with a motion for a new trial.

■ Petitioner's application further asserts, as indicated hereinbefore, that a confession to the crime charged was obtained under duress and involuntarily given by him, and that such confession was used against him at the trial of the cause. The Attorney General's office demurs to petitioner's alleged denial of constitutional rights by averring that no written or oral confession was elicited from petitioner, and by further averring that the record does not indicate that any such confession was introduced or used at the trial. But, even if the alleged coerced confession was not used at the trial, petitioner's constitutional rights might

still have been violated, since the existence of such a confession could well have been the principal factor motivating the petitioner's decision not to take the stand in his own behalf.

■ At any rate, on the face of the record before us, petitioner's allegations raise serious questions of fact as to denial of his constitutional rights to a fair trial which have not hitherto been passed upon by this court. We are convinced that the record before us is inadequate for an appropriate determination to be made of the factual issues involved. We think that this case should be remanded to the trial court for a full, factual hearing, affording the petitioner a fair and reasonable opportunity to call witnesses in his behalf, and to produce documentary or other evidence in support of his claims, if such evidence exists. A record should be made of such proceedings, with findings of fact made and entered by the trial judge. Thereupon, the case with a record of the proceedings and the findings of the trial court should be returned to this court for a final disposition.

It is so ordered.

HILL, WEAVER, HUNTER, and HAMILTON, JJ., concur.

HAMILTON, J. (concurring)—I have signed and concur in the reasoning and result of the majority opinion for several reasons. First, because I believe this court's habeas corpus jurisdiction has not been suspended, ousted, or obliterated by the pendency of the abated habeas corpus proceeding in the United States District Court for the Eastern District of Washington; secondly, because the procedural background of this case clearly distinguishes it from the situation presented in *In re White v. Rhay*, 65 Wn.2d 711, 399 P.2d 522 (1965); and, third, because any reasonable interpretation of the traditional and historical function of the writ of habeas corpus and of the decision in *Fay v. Noia*, 372 U.S. 391, 9 L. Ed. 2d 837, 83 Sup. Ct. 822 (1963), renders a petition for the writ available, as a post conviction remedy, to one held in custody who makes properly supported allegations of

infringement of fundamental constitutional rights, regardless of whether such person has theretofore appealed from his conviction. See *In re McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965).

Little need be said to further emphasize the view of a majority of the membership of this court concerning the "concurrent" state-federal court habeas corpus jurisdiction noted in *In re White v. Rhay, supra*. Suffice it to point out that Const. art. 4, § 4,[1] vests in this court original jurisdiction in habeas corpus and Const. art. 1, § 13[2] provides that the privilege of the writ of habeas corpus shall not be suspended, absent rebellion or invasion. Furthermore, RCW 7.36.130[3] and 7.36.140[4] impose upon this court the obligation to inquire into properly alleged violations of state or federal constitutional rights. Neither the constitutional nor statutory provisions predicate such an inquiry upon the absence of a federal court proceeding. Only judicial comity in an appropriate situation, if that, can justify or warrant

---

[1]"The supreme court shall have original jurisdiction in habeas corpus, . . . . The supreme court shall also have power to issue writs of . . . habeas corpus, . . . and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and may make such writs returnable before himself, or before the supreme court, or before any superior court of the state or any judge thereof." Const. art. 4, § 4.

[2]"The privilege of the writ of habeas corpus shall not be suspended, unless in case of rebellion or invasion the public safety requires it." Const. art. 1, § 13.

[3]"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

"(1) Upon any process issued on any final judgment of a court of competent jurisdiction except where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the state of Washington or of the United States have been violated." RCW 7.36.130.

[4]"In the consideration of any petition for a writ of habeas corpus by the supreme court, whether in an original proceeding or upon an appeal, if any federal question shall be presented by the pleadings, it shall be the duty of the supreme court to determine in its opinion whether or not the petitioner has been denied a right guaranteed by the Constitution of the United States." RCW 7.36.140.

refusal of our power and duty of habeas corpus inquiry in a proper proceeding initiated in our court by a state prisoner. Parenthetically, it should be observed that 28 U.S.C.A. § 2243 authorizes a federal court to dispose of an application for a writ of habeas corpus "as law and justice require," and a growing body of federal court decisions appear to approve of the procedure adopted in this case by the United States District Court for the Eastern District of Washington. *Ex parte Sullivan*, 107 F. Supp. 514 (D. Utah 1952); *Thomas v. Teets*, 205 F.2d 236 (9th Cir. 1953); *Crawford v. Bailey*, 234 F. Supp. 700 (E.D.N.C. 1964); *Blair v. California*, 340 F.2d 741 (9th Cir. 1965); *United States ex rel. Walker v. Fogliani*, 343 F.2d 43 (9th Cir. 1965); *Gidley v. Gladden*, 237 F. Supp. 477 (D. Ore. 1965); *Moorer v. South Carolina*, 239 F. Supp. 180 (E.D.S.C. 1965); *Grubbs v. Oklahoma*, 239 F. Supp. 1014 (E.D. Okla. 1965). These decisions no doubt find sustenance in the dispositions directed by the United States Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 Sup. Ct. 1774 (1964), and *Boles v. Stevenson*, 379 U.S. 43, 13 L. Ed. 2d 109, 85 Sup. Ct. 174 (1964).

Finally, in this respect, it should be noted in passing that Congress in 1966 took what might be considered a page from the case of *Townsend v. Sain*, 372 U.S. 293, 9 L. Ed. 2d 770, 83 Sup. Ct. 745 (1963), for it amended 28 U.S.C.A. § 2254 to read, in pertinent part, as follows:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, *evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct,* unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, *the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.* (Italics mine.)

Against this background, I would prefer to view the action by the United States District Court, in the instant case, as a practical procedural effort to realistically afford our state courts an opportunity to pass upon the merits of a state prisoner's allegations of constitutional infringements.

It should not be lightly characterized as an effort to relegate our state courts to the role of rendering advisory opinions. Particularly would this appear to be so when Congress has attached a presumption of correctness to an adequate written indicia of a state court's determination on the merits. Little, if anything, can be accomplished in the field of state-federal court relationships or in the fair administration of criminal justice by engaging in a jurisdictional dialogue. Mutual respect and juristic comity form the ultimate touchstone in the solution of the problems created by the overlapping obligations in the habeas corpus area.

The majority opinion has clearly enunciated the distinctions between the procedural situation confronting us in the instant case and *In re White v. Rhay*, 65 Wn.2d 711, 399 P.2d 522 (1965). As pointed out by the majority opinion, petitioner's initial petition for habeas corpus in this court was disposed of, without written opinion, by sustaining a demurrer. His second petition was dismissed as repetitious. In neither instance did we reach the merits. In contrast, we twice fully and exhaustively reviewed the trial proceedings and the merits of the claims of White—once on appeal (*State v. White*, 60 Wn.2d 551, 374 P.2d 942 (1962)), and once on petition for habeas corpus (*In re White v. Rhay*, 64 Wn.2d 15, 390 P.2d 535 (1964)). In both instances we rendered extensive written indicia of our views. White, having thus received the full consideration of this court, turned to the federal courts. When, then, the federal courts tendered the matter back for additional process in this court, this court was fully warranted in believing it had accorded the petitioner due process and that, in the practical interests of the administration of justice and judicial comity, the petitioner was entitled to proceed without further delay in the federal courts. *In re White v. Rhay*, 65 Wn.2d 711, 399 P.2d 522 (1965). Following this latter disposition, and before the federal district court rendered its decision in the White matter (April 8, 1966) the decision in *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 Sup. Ct. 836 (1966), was rendered by the United States Supreme Court. The federal dis-

trict court, feeling the *Pate* decision to be controlling, then granted White's petition. Mayhaps, the disposition in *In re White v. Rhay*, 65 Wn.2d 711, 399 P.2d 522 (1965), would have been different had this court then had the *Pate* decision before it.

Furthermore, in all proceedings before this court the petitioner in the *White* matter was fully represented by counsel. In contrast, the petitioner in the instant case, an indigent, was denied the assistance of counsel when his initial application for habeas corpus came before this court and was disposed of on demurrer. In this vein, some note must necessarily be taken of the implications of *Smith v. Bennett*, 365 U.S. 708, 6 L. Ed. 2d 39, 81 Sup. Ct. 895 (1961); *Lane v. Brown*, 372 U.S. 477, 9 L. Ed. 2d 892, 83 Sup. Ct. 768 (1963); and *Long v. Iowa*, 385 U.S. 192, 17 L. Ed. 2d 290, 87 Sup. Ct. 362 (1966).

For the foregoing reasons, *In re White v. Rhay*, 65 Wn.2d 711, 399 P.2d 522 (1965), does not furnish the yardstick for our disposition in the present matter.

Finally, the fundamental and traditional function of the writ of habeas corpus deserves some comment. The very purpose of the writ is to afford a mode of redress against restraints imposed contrary to basic constitutional principles. Perforce, it questions the finality of the order or judgment it challenges. In the words of Justice Holmes, taken from his dissent in *Frank v. Mangum*, 237 U.S. 309, 346, 59 L. Ed. 969, 35 Sup. Ct. 582 (1915):

> [H]*abeas corpus* cuts through all forms and goes to the very tissue of the structure. It comes in from the outside, not in subordination to the proceedings, and although every form may have been preserved opens the inquiry whether they have been more than an empty shell.

That this concept of the writ has been recognized and implemented by our state legislature is evident from RCW 7.36.130, which, in pertinent part, provides:

> No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:

(1) Upon any process issued on any *final judgment* of a court of competent jurisdiction *except where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the state of Washington or of the United States have been violated.* (Italics mine.)

Thus, however eloquently or engagingly one argues the desirability of finality in criminal judgments or decries the availability of the writ absent an appeal in a given case, the politic fact of life remains that the writ is constitutionally and legislatively embedded in our system of criminal justice. It is not about to disappear in the clouds of expediency. See *Fay v. Noia*, 372 U.S. 391, 9 L. Ed. 2d 837, 83 Sup. Ct. 822 (1963). Understandably, there can be disagreement as to the merits of a given petition or application for a writ, but there is little room for dispute as to its ever present availability as a remedy to relieve unconstitutional restraint.

If, in the instant case, there be merit in petitioner's allegations, we should reach and fairly dispose of the issues thus raised.

DONWORTH, J. (dissenting)—The majority hold that this court and the federal district court have "concurrent jurisdiction" of this habeas corpus proceeding. In my opinion, the majority misconceive the meaning of this phrase as applied to the present situation.

Before I discuss the reasons and authority on which this dissent is based, I wish to supplement the statement of facts in this case.

From the rather meager record furnished us, it appears that, on March 7, 1963 (after the jury had brought in its verdict of guilty), the petitioner filed a motion for new trial supported by three affidavits.

One affidavit signed by his court-appointed counsel stated that he had attempted to locate a certain Nick Sampson, who was present in the Seattle city jail at the time when the petitioner was searched for narcotics and would testify that he saw him brutally beaten by the police. Counsel deposed that the proposed witness' testimony would contra-

dict that of two police officers, who testified to the contrary at the trial. The affidavit of trial counsel further stated that he did not succeed in locating this material witness until after the jury had retired to deliberate on its verdict, although he used due diligence in attempting to do so. Counsel further stated that his client (if granted a new trial) might take the stand and testify to what took place in the city jail at the time he was searched. The petitioner filed his own affidavit in support of this last averment of his counsel.

The third affidavit filed in support of the motion for new trial was that of Nick Sampson who stated that he was present in the city jail at the time the petitioner was searched. He stated in part:

> . . . . That he was in the city jail, in Seattle with Elizia Scruggs on one occasion; That the police held a shakedown of the jail & found some money in blankets on Scruggs bed; That they then ordered all prisoners out for shakedown; That affiant was witness to & saw the cops beat up Scruggs; That affiant saw them make Scruggs strip naked & lay on the deck naked on his stomach & spread eagle; That affiant then saw them kick Scruggs & stamp on his ankle; That affiant saw a detective, he thinks was Dect. Lambert, hold something in his hand & question Scruggs about; That all this is true & affiant makes this statement freely of his own free will & is not induced by any promises or threats of any kind by any one.

This motion for a new trial was denied by the trial court, and judgment and sentence was entered March 8, 1963, upon the jury's verdict of guilty. No notice of appeal was ever filed from that judgment and sentence.

On December 27, 1963, the petitioner filed his first petition for writ of habeas corpus in this court in which he alleged as "grounds for issuance" the following:

> The judgment, sentence and conviction are void upon their face upon the following grounds:
>
> On June 7th, 1962, petitioner was convicted for shop lifting and sentenced to 20 days in the city jail and fined $100.00.

I was booked, searched and commited to serve 20 days. I was assigned to a cell with 4 other prisoners. Later in the evening they had a routine shake down. One officer walked up to me with something in his hand and asked me what it was. I sais he had it. What was it? And he said if it was dope, I was in trouble.

My court appointed attorney got the name of 4 men that saw the police walk up to me with the narcotic. He told me they gave him notarized statements of the non-existent crime, and that they would be subpeonad [sic] as defense witnesses. The prosecution contended there were no such witnesses, that defense attorney would have taken the necessary steps to produce such witnesses.

Petitioner was granted permission to proceed in forma pauperis, but his request for this court to appoint counsel to represent him was denied.

The attorney general representing the respondent, the superintendent of the state penitentiary, demurred to the petition on the following ground:

That the petitioner's application for a writ of habeas corpus does not state facts sufficient to constitute a claim for relief in habeas corpus proceedings.

This matter was heard by this court on March 6, 1964, and an order sustaining the demurrer was entered 3 days later.

On June 18, 1964, the files in this proceeding were ordered to be transmitted to the Clerk of the United States District Court for the Eastern District of Washington.

Petitioner (represented by counsel other than the one appointed to represent him at his trial) filed his second petition in this court on September 26, 1964, in which he alleged that he was a pauper and was unable to pay the costs in this proceeding; that the present proceeding was brought in good faith and was not repetitive.

His grounds for relief are stated as follows:

IV. Further your petitioner deposes and says:

A. that there is pending in the United States District Court for the Eastern District of Washington, Southern

Division, a petition for Federal Habeas Corpus, H. C. 1965.

B. that upon the suggestion of the Honorable Judge Charles Powell, your petitioner is requesting the State Courts to determine the Federal constitutional issue in this cause.

C. that the issues raised in this petition are:

1. whether your petitioner was denied compulsory process of witnesses in his trial.

2. whether a coerced confession was introduced at petitioner's trial in King County, State of Washington, in violation of petitioner's rights secured by the Fifth and Fourteenth Amendments to the United States Constitution. And Petitioner alleges that de facto such a confession was introduced.[5]

D. that the Attorney General of the State of Washington will support this petition.[6]

On November 9, 1964, *after* the United States District Court for the Eastern District of Washington had taken jurisdiction of the cause in the manner shown by the transcript of the proceedings quoted below, petitioner filed a third petition (designated as "Amended Petition in Forma Pauperis"), which is now before us. In it he alleges, with some elaboration, substantially the same grounds for relief as stated in his first petition, to wit (1) that at his trial he was denied the right to produce witnesses in his own behalf, and (2) that a coerced confession was introduced in evidence by the state. Hence, he claims that his judgment and sentence is void because his constitutional rights were violated in these two respects.

---

[5] In the file in the instant case is an uncertified transcript of a portion of the trial proceedings in the superior court, in which it is stated that the trial judge refused to admit in evidence petitioner's alleged coerced confession. If this is correct, petitioner's second ground for relief claimed in his amended petition to this court is nonexistent.

[6] Regarding Item D of the petition to the effect that the attorney general will support the petition, it should be noted that the attorney general has filed a 22-page brief in this court in opposition to the granting of the petition.

Attached to this petition is a transcript of a hearing held in the United States District Court for the Eastern District of Washington (hereafter referred to as the District Court) on August 28, 1964, in which petitioner's counsel stated to the court:

Mr. Conklin: Your Honor, this petitioner has exhausted all state rights and remedies as far as he can, and he has a valid constitutional claim with regard to the failure of the state to permit him to have compulsory process of witnesses.

The only problem would be the factual dispute that would arise in this matter.

I have tried to get in touch with his counsel, but he is on vacation.

After discussion of a letter which the court had received from petitioner's court-appointed trial counsel, the assistant attorney general, representing the superintendent of the state penitentiary, stated:

Mr. Clark: I don't seem to have the issue here that the Court has in mind, as far as a reference to the Supreme Court is concerned. This matter was before the Supreme Court, your Honor.

The Court: But it was disposed of on demurrer.

Mr. Clark: Yes, it was disposed of on demurrer.

The Court: The question which does not show on the record, and the question that was raised here, is whether or not the defendant was apprised of the opportunity of compelling witnesses to testify in his behalf, securing witnesses to testify in his behalf. That is the question that is raised.

Mr. Clark: Since it was disposed of by demurrer, I think the Court is absolutely right, that maybe this is one of these matters which we should hold in abeyance and petition once again to allow the Supreme Court to reopen—I don't know what the contents of this letter is yet, but apparently—

The Court: It may not have a direct bearing on the question here, but again it may, I don't know. I don't know anything about the facts in the case.

Mr. Conklin: The first part of it alleged a coerced confession in King County. May I have a copy of the letter, your Honor?

The Court: Yes. Perhaps I had better make copies and send one to you.

The Court: Counsel, do you have any objection to that procedure?

Mr. Conklin: No, your Honor, we could hold it in abeyance until the State Supreme Court decides whether they want to hold a factual hearing on it.

The Court: It seems to me that the only method by which there could be an adequate determination of the objections raised by the petitioner here, is to have a factual hearing, and I think that should be in the court where the original conviction took place where Mr. Tackery testified and any other witnesses and any other witnesses that he or his counsel, petitioner's counsel at that time, might see fit to obtain.

Could you petition the Supreme Court in a form similar to that of Mr. Fancher in the Tweedy case?

Mr. Conklin: Yes, your Honor.

The Court: Then, as a part of the pretrial conference I will hold these matters in abeyance until otherwise ordered by the Court, so that an application may be made to the Supreme Court for reopening of the proceedings there, and a reference to take testimony on the disputed question of fact.

Mr. Clark: The mechanics of the matter, your Honor, would be this: The petition, if they reopen over there in the Supreme Court, then I would petition, requesting the clerk, setting up that the petition, return and answer raised questions of fact, which cannot be satisfied in the Supreme Court, and ask them for an order of reference, and they will refer it back to King County.

Mr. Conklin: I see.

Mr. Clark: And I will try, if I can, to contact you with reference to the order of reference, and let's crystalize in the order of reference the issues that we have to bring back to Judge Powell.

Mr. Conklin: All right.

Mr. Clark: I think that would be a real good idea, to crystalize them, in the order of reference, and we can practically put the pretrial order of this court into that court.

Mr. Conklin: All right.

The Court: Yes. All right. This matter will be continued. Will you prepare the order, Mr. Clark, in this case?

Mr. Clark: The pretrial order, your Honor?

The Court: The order holding the matter in abeyance.

Mr. Clark: Yes, I will, your Honor.

Also attached to this petition is a copy of an affidavit of petitioner's trial counsel sworn to at Bellingham on October 29, 1964, relating to his locating Nick Sampson, who would testify as to what happened at the city jail at the time petitioner was searched by the police officers. This affidavit differs in one material respect from counsel's affidavit in support of the motion for new trial, to wit, it is now stated that petitioner had testified at his trial that there was certain police brutality inflicted upon him at the time of the search, whereas counsel had previously stated that petitioner had *not* taken the stand at his trial because he had no corroborating witness at that time.

It should be clear that, although the case is factually different from *In re White v. Rhay*, 65 Wn.2d 711, 399 P.2d 522 (1965), the differences are not material to the issues in this case because it is in the identical procedural posture.

As I stated at the beginning of this dissent, the majority hold that this court and the federal district court have "concurrent jurisdiction" of this habeas corpus proceeding. In my opinion, the majority misconceive the meaning of this phrase as applied to the present situation.

It is true that petitioner could have filed his petition for habeas corpus either in this court (as he did originally) or in the district court. But he cannot invoke the jurisdiction of both courts simultaneously for the determination of his right to habeas corpus relief.

In *Fay v. Noia*, 372 U. S. 391, 430, 9 L. Ed. 2d 837, 83 Sup. Ct. 822 (1963), the Supreme Court said:

Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner.

In the case at bar, the warden of the state penitentiary, who is holding the petitioner in custody, is named as re-

spondent in the proceeding in this court and also in the federal court proceeding. The federal court has accepted jurisdiction of petitioner's petition and has ordered the warden to continue to hold him in custody until further order of *that court.*

It is not legally possible for this court, if it assumed jurisdiction and held a hearing on the petition now before us, to decide that the warden is illegally depriving petitioner of his liberty and order the warden to release him either absolutely or conditionally (if he be not granted a new trial within 120 days, for example).

Indeed, this court apparently is not expected to render a final decision on the merits of the legality of the warden's depriving him of his liberty.

As I read the colloquy between the federal court and respective counsel (quoted above), we are only expected to remand the matter to the superior court (in which he was tried and convicted) with directions to hold a factual hearing and enter findings as to whether he was denied the right to subpoena a certain witness who was not located by trial counsel until after the jury had retired to deliberate upon their verdict.

This court must, upon receipt of such findings, append an identifying certificate thereto and forward them to the federal court. If we express any opinion on the merits, it will not be binding on the federal court, but will be merely advisory.

In the case of *In re White v. Rhay,* 65 Wn.2d 711, 399 P.2d 522 (1965), the majority opinion discussed this same problem in great detail, and that opinion should be considered as incorporated by reference as a part of this dissenting opinion.

As the result of that decision, in which we declined to entertain White's petition for habeas corpus, the federal court held its own factual hearing and determined that White must be released by the warden unless he should be granted a new trial within 120 days. We are advised that the

final order entered by the federal court in the cited case has been appealed to the United States Court of Appeals.

In the majority opinion in *In re White v. Rhay, supra* at 718, we quoted the following portion of the Supreme Court's opinion in *Townsend v. Sain,* 372 U.S. 293, 9 L. Ed. 2d 770, 83 Sup. Ct. 745 (1963), relating to when the federal district court should grant a state prisoner a factual hearing on his application for habeas corpus:

" . . . It is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues. Thus a narrow view of the hearing power would totally subvert Congress' specific aim in passing the Act of February 5, 1867, of affording state prisoners a forum in the federal trial courts for the determination of claims of detention in violation of the Constitution. The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.

"III.

"We turn now to the considerations which in certain cases may make exercise of that power mandatory. The appropriate standard—which must be considered to supersede, to the extent of any inconsistencies, the opinions in *Brown v. Allen*—is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

In further elaboration, the majority stated, at page 318:

". . . Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's *duty* to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas. That was settled in

*Brown v. Allen, supra* [344 U. S. 443, 97 L. Ed. 469, 73 Sup. Ct. 397], at 506 (opinion of Mr. Justice Frankfurter)." (Italics ours.)

Referring again to the majority's statement in the present case that both courts have "concurrent jurisdiction" of the same petitioner's petition for habeas corpus, it seems obvious to me that both courts cannot *concurrently* direct the warden to release or continue to hold petitioner in custody.

For example, suppose that we (exercising concurrent jurisdiction) had entertained White's petition in *In re White v. Rhay, supra,* and had decided that his claims were without merit and had directed the warden to proceed with his execution, and, suppose, further, that the federal court then held its hearing and determined, on the basis of its own findings of fact (as it did), that White should be released from custody unless the state granted him a new trial within 120 days. Under the majority's concurrent jurisdiction theory, which court order should the warden obey? This precise situation might have occurred in the *White* case. See *State v. White,* 60 Wn.2d 551, 374 P.2d 942 (1962).

Consequently, as indicated above, there can be no such thing as "concurrent jurisdiction" *after* one court having jurisdiction has accepted the case and by its order has stayed the hand of the warden until that court shall have entered a further order in respect to the petitioner's custody.

In this state a convicted felon who claims that his federal constitutional rights have been denied him may file a petition for habeas corpus in this court (RCW 7.36.140) or he may file a petition in the federal district court. But he may not pursue both remedies simultaneously.

In all the decisions of the United States Supreme Court that appear to approve the concept of "concurrent jurisdiction," the statement is with reference to the power or authority of the federal court system to exercise federal jurisdiction in connection with the criminal procedural proc-

esses of the state courts so as to *remove* certain issues to the federal courts, and not vice versa. For example, see *Fay v. Noia*, 372 U. S. 391, 9 L. Ed. 2d 837, 83 Sup. Ct. 822 (1963), especially the discussion at pages 416-420.

The whole thrust of the terminology and logic of the United States Supreme Court's legal analysis recently has been that the federal district court not only has the *power* but the *duty* to decide the issue raised by a petition for federal habeas corpus. The United States Supreme Court categorically denies that the congressional enactment of the federal habeas corpus statutes is in the nature of a review of a state court's determination of the merits of the issues raised by a petition for habeas corpus. In *Fay v. Noia*, *supra* at 416, the opinion states:

> Congress seems to have had no thought, thus, that a state prisoner should abide state court determination of his constitutional defense—the necessary predicate of direct review by this Court—before resorting to federal habeas corpus. Rather, a remedy almost in the nature of *removal* from the state to the federal courts of state prisoners' constitutional contentions seems to have been envisaged. See *Ex parte Bridges*, 2 Woods 428, 432 (Cir. Ct. N.D. Ga. 1875); *Ex parte McCready*, 1 Hughes 598 (Cir. Ct. E.D. Va. 1874). Compare Rev. Stat., 1874, § 641 (providing for removal to Federal Circuit Court "When any civil suit or criminal prosecution is commenced in any State court, for any cause whatsoever, against any person who is denied or cannot enforce in the judicial tribunals of the State . . . any right secured to him by any law providing for the equal civil rights of citizens of the United States"); *Virginia v. Rives*, 100 U. S. 313.

The above passage from *Fay v. Noia, supra,* is based on *Virginia v. Rives*, 100 U. S. 313, 25 L. Ed. 667 (1879), wherein at 100 U. S. 316, 317, the United States Supreme Court stated:

> If the petition filed in the State court before trial, and duly verified by the oath of the defendants, exhibited a sufficient ground for a removal of the prosecutions into the Circuit Court of the United States, they were in legal effect thus removed, and the writ of *habeas corpus* was properly issued. All proceedings in the State court subse-

quent to the removals were *coram non judice* and absolutely void. This, by virtue of the express declaration of sect. 641 of the Revised Statutes, which enacts that, "upon the filing of such petition, all further proceedings in the State court shall cease, and shall not be resumed except as thereinafter provided." In *Gordon v. Longest* (16 Pet. 97), it was ruled by this court that when an application to remove a cause (removable) is made in proper form, and no objection is made to the facts upon which it is founded, "it is the duty of the State court to 'proceed no further in the cause,' and every step subsequently taken in the exercise of jurisdiction in the case, whether in the same court or in the Court of Appeals, is *coram non judice.*" To the same effect is *Insurance Company v. Dunn,* 19 Wall. 214.

In *Insurance Co. v. Dunn,* 86 U. S. (19 Wall.), 214, 22 L. Ed. 68 (1873) at pages 223, 224, the United States Supreme Court stated:

The conditions prescribed having been complied with, the act of Congress expressly required the State court where it was originally pending, *"to proceed no further in the suit."* The further proceedings of the Common Pleas was a clear case of usurped jurisdiction. The illegality was gross. The action of the District and Supreme Court of the State gave them no validity. The maxim, that consent cannot give jurisdiction, applied with full force. *Gordon v. Longest* [41 U. S. (16 Pet.) 97] is exactly in point and conclusive. (Footnote omitted.)

It is a most extraordinary procedure if, after a *removal* of the issues to the federal district court, the state court retains any concurrent jurisdiction on the issues so removed. If there is any real meaning to the term "concurrent jurisdiction" of the state court system to try the issues of an alleged infringement of federal constitutional rights of an accused, the words mean potential jurisdiction, assuming that the federal jurisdiction has not been invoked so as to supersede the state jurisdiction. It is meaningless to say that our state court has "concurrent jurisdiction" when the issues are removed to and presently pending before the federal district court. We should not deceive ourselves by labeling our entertainment of this petition as an act of

taking jurisdiction, because our decision will not have the effect of a judicial decision subject only to the review for procedural or substantive error. See *Fay v. Noia, supra* at 421, 422. The idea that we have any concurrent *jurisdiction* in these issues is a logically, legally, and factually semantic fallacy. Our decision would be *merely* advisory because the matter has been "removed" to federal court.

I believe that, under the supremacy clause of the United States Constitution and the federal statutes referred to below, the federal district court has a congressional mandate of *exclusive* jurisdiction to decide the issues raised in the petition presented to it, which are the identical issues raised in a petition for habeas corpus presented to our court. Therefore, we cannot take jurisdiction of a matter now pending before the federal district court.

The United States Congress has enacted statutes pertaining to federal habeas corpus which are now codified as 28 U.S.C. § 2241-2255, inclusive. The statutory provision which states the responsibility and authority of the federal district court when it has received a petition for habeas corpus is 28 U.S.C. § 2243, which reads:

A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

The writ, or order to show cause shall be directed to the person having custody of the person detained. It shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed.

The person to whom the writ or order is directed shall make a return certifying the true cause of the detention.

When the writ or order is returned a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed.

Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.

The applicant or the person detained may, under oath, deny any of the facts set forth in the return or allege any other material facts.

The return and all suggestions made against it may be amended, by leave of court, before or after being filed.

*The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.* (Italics mine.)

As was stated and discussed in great detail in *In re White v. Rhay,* 65 Wn.2d 711, 715-716, when a petition for the writ is presented to the federal district court, the court is directed by Congress to follow one or the other of the two alternatives contemplated by the statute. Either the federal district court shall take jurisdiction of the subject matter and hold its hearing so as to try the matter, or it shall dismiss the petition. I can see no other plausible analysis of this statutory language than that, if the federal district court takes jurisdiction, that jurisdiction is exclusive until the matter has been finally disposed of by a decision of that court on the issues raised. The language of the last sentence of that statute is conclusive on this point.

The majority opinion relies on 26 U.S.C.A. § 2254 as authority for the proposition that state courts have "concurrent jurisdiction" with the federal courts on issues of infringement of federal constitutional rights even if the federal district court accepts jurisdiction of the subject matter of the federal habeas corpus petition. That section says nothing about "concurrent jurisdiction." What it does state is that a *hearing* on the writ shall not be granted (commonly known as "granting the writ") unless it appears to the district court that the applicant has exhausted the remedies available in the courts of the state.

This section must be read in conjunction with 26 U.S.C.A. § 2243 (quoted above in this dissent) in order to determine what Congress directed should be done if state remedies have not been exhausted. I fail to see anything in the statutory language of either § 2254 or § 2243 which implies actual concurrent proceedings may be pending in both the federal and state courts on the same issues at the

same time. Indeed, in my opinion, the language of 26 U.S.C.A. § 2243 totally negates such a possibility. Furthermore, such a "concurrent jurisdiction" is not realistically possible when, as here, the order or decision of the state court is merely advisory.

The exhaustion of the state-remedies provision refers to a state court trial and to any available state appellate review of the proceedings therein. It does not include repetitive collateral attacks in the state courts on the judgment and sentence. Otherwise, the habeas corpus procedure could continue indefinitely.

We are aware of the opinions expressed in *United States ex rel. Walker v. Fogliani,* 343 F.2d 43 (9th Cir. 1965); *Blair v. California,* 340 F.2d 741 (9th Cir. 1965); and *Thomas v. Teets,* 205 F.2d 236 (9th Cir. 1953). Those opinions do not hold that a state court has jurisdiction to decide the issues which are the subject matter of a presently pending petition for federal habeas corpus, because state jurisdiction is not a question which the federal court system can decide. Only the state courts can decide this issue. The holding of those cases is that, since it appeared that state remedies were not exhausted, the federal district court could not issue the writ (hold a hearing on the merits of the application), and that the application for the writ could be held in abeyance pending an exhaustion of state remedies.

The question of whether the petitioner has exhausted his state remedies for the purpose of the issuing of the writ (granting the hearing on the merits) is to be decided by the federal court. Under the pertinent act of Congress (26 U.S.C.A. § 2254), that court cannot hold a hearing unless it finds that he has exhausted his state remedies.

The majority opinion by implication seems to hold that petitioner in the present case has not exhausted his state remedies. While this court has no authority to answer the question, it should be noted that, with reference to § 2254, the federal courts have held that, where a state prisoner has been convicted and has appealed to whatever state

appellate courts are presently available to him, he has exhausted his state remedies. *Goldberg v. Hendrick,* 254 F. Supp. 286 (E.D.Pa. 1966).

In *Fay v. Noia, supra,* it was said, at 372 U. S. 399:

(2) Noia's failure to appeal was not a failure to exhaust "the remedies available in the courts of the State" as required by § 2254; that requirement refers only to a failure to exhaust state remedies still open to the applicant *at the time he files his application for habeas corpus in the federal court.* (Italics mine.)

In the present case, the petitioner was duly tried and convicted, and did not appeal from the judgment and sentence imposed on him. He has twice previously raised substantially the identical issues in this court in two petitions for habeas corpus. Both of these petitions were denied, the first on a demurrer, and the second on the basis that it was repetitive of the first. He then applied to the federal district court for habeas corpus.

His present counsel stated at the opening of the hearing in the federal district court:

Mr. Conklin: Your Honor, this petitioner has exhausted all state rights and remedies as far as he can, and he has a valid constitutional claim with regard to the failure of the state to permit him to have compulsory process of witnesses.

It seems obvious that his counsel was correct *at the time* the application was filed in federal district court.

Finally, I believe that Judge Hamilton's opinion in *In re White v. Rhay,* 65 Wn.2d at 725, 726, is applicable to this case. Judge Hamilton, who did not agree with the majority opinion on the jurisdiction issue but concurred on our declining to exercise jurisdiction because the court would be merely rendering an advisory opinion, stated:

(1) Petitioner, by his allegations in support of his application for a writ of habeas corpus, raises primarily federal questions; that is, he asserts substantial infringements of rights guaranteed by the United States Constitution.

(2) While we have jurisdiction and responsibility, in common with the federal courts, to determine such ques-

tions in appropriate direct or collateral proceedings, petitioner has, by his pending petition in the United States District Court, sought to invoke the jurisdiction of the federal judiciary.

(3) The rule of exhaustion of state remedies, as propounded in 28 U.S.C.A. § 2254, does not, in my opinion, require petitioner, after exhausting his state appellate remedies, to repeatedly challenge the judgment and sentence by a series of collateral attacks in state courts before being entitled to invoke the jurisdiction of the federal courts. See *McBee v. Bomar,* 296 F. (2d) 235 (6th Cir. 1961); *In re Thompson's Petition,* 301 F. (2d) 659 (3d Cir. 1962); *Mills v. Tinsley,* 314 F. (2d) 311 (10th Cir. 1963); *United States ex rel. Everett v. Murphy,* 329 F. (2d) 68 (2d Cir. 1964).

(4) The federal court, since its jurisdiction has been invoked, may conduct its own evidentiary hearing if it be dissatisfied with the evidentiary hearings heretofore afforded by the state. *Fay v. Noia,* 372 U. S. 391, 9 L. Ed. (2d) 837, 83 S. Ct. 822 (1963); *Townsend v. Sain,* 372 U. S. 293, 9 L. Ed. (2d) 770, 83 S. Ct. 745 (1963).

With these thoughts in mind, it appears to me that comity strongly suggests, if it does not demand, that we defer to the invoked jurisdiction of the federal court and allow it to proceed with its disposition of the petition before it without the intervention or delay of additional state court hearings. Neither society, the orderly administration of criminal justice, nor the dignity of the state and federal judicial systems stand to gain by an Alphonse and Gaston approach in bouncing the "evidentiary hearing ball" back and forth. Only delay, duplication, and disrespect for our system of justice can result.

I would, accordingly, deny the request for an order of reference and dismiss the petition now pending before us.

The majority opinion in this case arrives at a result which is directly contrary to the result of *In re White v. Rhay,* 65 Wn.2d 711, 399 P.2d 522 (1965), on a case that is procedurally indistinguishable. I am of the opinion that the result reached in the present case is unfortunate and unwarranted. The majority result gives judicial sanction of this court to an unauthorized time and money-wasting procedural technique whereby the federal district courts in

this state will hereafter be encouraged to retain jurisdiction over petitions for federal habeas corpus filed by state prisoners, but will refer the issues raised by them to our state court system for the purpose of obtaining advisory opinions from (1) our superior court (trial court) on certain findings of fact and (2) our supreme court (appellate court) on certain conclusions of law on federal constitutional questions. We are setting an *unfortunate precedent.*

In my opinion, there is no doubt that this court has a responsibility to hear issues concerning the infringement of federal constitutional rights when duly raised and properly presented to it. But this court is not a preliminary hearing tribunal for the handling of the pretrial issues raised in the federal district court. In addition to the other reasons stated above, we have too large a backlog of pending cases for us to take the time to hear and decide cases in which our decisions are merely advisory in connection with the pretrial procedures of the federal district court. If there is any doubt that this is the limit of our function in the present case, I refer to the portion of the record in the federal district court quoted above in this dissent. If there is to be a meaningful handling of the federal habeas corpus issues in our state court system, then the judicial process in which we spend our time and efforts should have final significance. When our function has significance only as certifying evidence (See 26 U.S.C.A. §§ 2245, 2247) and as writing an advisory opinion (See *Fay v. Noia, supra*), the procedure is not judicial in character.

As stated in *In re White v. Rhay, supra*, I am of the opinion that this court should dismiss the petition before us for lack of jurisdiction of the subject matter and, in the alternative, assuming jurisdiction, I think that we should decline to exercise it for the reasons stated in Judge Hamilton's concurring opinion in that case.

OTT, J., concurs with DONWORTH, J.

ROSELLINI, J. (dissenting)—I agree with the majority that this court has jurisdiction to hear a petition for a writ

of habeas corpus of a prisoner of a state institution, regardless of whether a federal court has also taken jurisdiction of such a petition and, regardless of the fact that an order of the federal court on a petition by the same prisoner might supersede or override any order of this court. However, I do not think that this court should accommodate the federal court in this instance by assuming jurisdiction for the purpose of ordering a superior court hearing which will be followed by a further hearing in this court.

I see nothing in the present posture of the case which makes the petitioner's position more meritorious than it was when the petition was first before us on demurrer and that demurrer was sustained. What does the petitioner allege? First, that he was beaten up in order to obtain a confession. Second, that his attorney failed to take his suggestion and subpoena a witness who would testify about the beatings, but *not* that the court refused a request to compel the attendance of the witness. And third, that a coerced confession was introduced in evidence against him. The majority concede that the record shows that no confession was in fact admitted in evidence, but they nevertheless speculate that the petitioner may have refused to take the stand out of fear that it would be used against him. He makes no such allegation.

I do not think that we should dream up allegations for a petitioner who has failed even to appeal from a judgment against him, particularly when the petitioner was represented by counsel.

In short, none of the allegations of the petitioner seems to be sufficient, without bolstering by the court, to amount to an allegation that he was denied a constitutional right. There is nothing to show that he was not convicted on perfectly competent evidence, with all incompetent or prejudicial evidence excluded, and with no hampering of his counsel in the conduct of his defense.

If he was, in fact, beaten by the police, that should be grounds of an action in tort. But unless a confession was extorted and was used to obtain a conviction, insofar as my

examination of the authorities has disclosed, it would not be grounds for a new trial. His allegations do not show that either of those results occurred, nor do they show that the witnesses who might have testified, had they been subpoenaed, would have contradicted the testimony against him or established a defense to the charge. Their testimony, he says, would have corroborated his story of mistreatment by the police. It is obvious that such corroborating evidence was not necessary since the confession allegedly induced by it was not in evidence.

This court is 10 months behind in hearing and deciding cases due to the physical impossibility of hearing all cases which come before it when they are ready for argument. I do not think it is wise or just that the court should spend its time on a patently frivolous petition for a writ of habeas corpus just because a federal court will give it the dignity of recognition.

If the United States District Court feels, as it appears to, that the petitioner's allegations are not frivolous, it should hold an evidentiary hearing. It is its duty to do so. See *Fay v. Noia,* 372 U.S. 391, 9 L. Ed. 2d 837, 83 Sup. Ct. 822 (1963).

The federal court should not require the state court to relitigate a criminal case. Such relitigation may become a never-ending task. If we retry this case and the petitioner is dissatisfied with the decision of this court, he will then invoke his federal habeas corpus petition. There is no certainty that in reviewing the state decision, the federal court will sustain it. This is so because the federal court's examination of the record will be by one judge while in the state court it is by a multijudge court. On close and difficult legal questions, a multijudge court may differ but a majority of the judges will determine the issue, while a one-judge court may decide the case according to the judge's predilection as to what the law should be.

If the Federal District Court decides to "relick the calf" it should do so itself. It has the time, the right, and the funds of the U. S. Treasury for the purpose.

The federal court's insistence that the state re-examine a thrice-examined felony conviction means that the state

court must tell its law abiding citizens that their cases cannot be heard as promptly as they might otherwise be because the time allotted to a citizen's case must be given to a felon who must have his case heard four times.

If a petition does not allege facts sufficient to show a denial of a constitutional right, this court should not issue the writ. I believe the petition before us is fatally defective in this regard and that writ should be denied.

HALE, J. (dissenting)—For reasons set forth in an earlier opinion (*In re White v. Rhay*, 65 Wn.2d 711, 726-35, 399 P.2d 522 (1965)), I agree with the majority that this court does not lose jurisdiction in habeas corpus even though petitioner has a similar petition pending in the district court of the United States. I concur with the dissenting opinion, however, on all points except that of jurisdiction, and accept its conclusion that the petition should be dismissed.

The petition should be dismissed because it is without merit; it raises no justiciable issues presently cognizable by the highest court of the state. This court has more urgent business than the review of such stale, repetitive and overworked claims as are now asserted in this, petitioner's fourth petition for habeas corpus.

At his trial 4 years ago, petitioner apparently made the same claims that he makes now concerning the June 7, 1962, search of jail inmates, *i.e.*, that the police framed him by planting heroin and Nembutal in his trouser cuff; that during the search they stripped him and compelled him to lie naked on the jail floor; and that, although he made a written confession later, it was coerced and, therefore, inadmissible. Respondent specifically denies that a confession was ever taken from petitioner, much less employed at trial.

Petitioner went to trial on the primary issue of guilt or innocence and on the issues necessarily included in his claimed impairment of constitutional rights. Police officers testified that, after observing one of the jail inmates to be under the apparent influence of narcotics, they conducted a

search of the jail and its inmates. In doing so, they said that they saw petitioner put something into the left trouser pocket of the person standing to his right. Thereupon, the officers testified, they searched the petitioner, had him strip and made a search of his body. This evidence was received at trial and considered by the jury. On all of these issues of fact, the trial court, in ruling on the admissibility of evidence, and the jury, by verdict, found against him.

Petitioner revived these same issues before the trial judge in his motion for a new trial and, again, the court, after considering fully petitioner's claims, discountenanced his assertions of fact and refused him a new trial. I think that the trial court acted not only within its discretionary powers specifically in denying the new trial but altogether in consonance with its judicial duties. Petitioner must have thought so too, for he elected to carry his grievance no further.

At that juncture, petitioner had readily available to him one of the most effective devices for the guarantee of due process abiding within this or any judicial system—the right to appeal, a right not vouchsafed in every jurisdiction. He had the right to present all of his claims of error and denial of constitutional rights assessed by a multijudge court having full power to correct any errors or denial of due process and sworn under the constitutions of the United States and the state to do so. He knew then, as he knows now, that, if he failed to exercise that right within the time set for giving notice of appeal, he would be deemed no longer aggrieved at the judgment and sentence and be held to have waived all claims which then could or should have been raised.

With this knowledge and with the natural presumption that his grievances were far fresher and more cogent in his mind right after trial when he urged his motion for a new trial than they could be said to be now, 4 years later, petitioner declined to appeal. He did not even prepare a record from which it could be readily ascertained whether a confession was ever introduced in evidence, although such a record could easily have been then prepared.

The majority opinion now sets in motion expensive and time-consuming judicial machinery on unsupported assertions of fact at the behest of one who spurned the regular machinery of justice then available to him for a review of such claims. Now, when memories have faded, witnesses have died or scattered, valuable evidence, if any, lost or restored to its rightful owners, the court gives dignity to this frivolous petition by ordering a formal trial on the stale claims he readily could have asserted long ago.

In other words, a session of court will be held at the instance of petitioner, witnesses summoned, and the court obliged to make specific findings on such questions as: (1) Did the police frame petitioner by planting heroin and Nembutal in his trousers? (2) Did the police, in having him strip and forcing him to lie naked on the jail floor while they searched his person, exceed their lawful authority? If so, did this affect the evidence at trial to his detriment? (3) Did the police then stamp on his ankles, as he says, to force him to confess? (4) Did he confess, and when, and under what circumstances? (5) Was this confession introduced at his trial? (6) If so, was it obtained from him by coercion? In short, the court must again answer the same questions which were answered or readily could have been answered had they been asked at trial and on appeal.

A reading of the claims made by petitioner here demonstrates that his assertions and hundreds like them can readily be made by every convicted felon in a penitentiary who has access to a pencil and paper. Experience shows that the instant petition is but one of thousands of completely groundless and frivolous claims brought every year in the courts of this country. That the Supreme Court of the United States accepts this view may be ascertained from a reading of several quite recent opinions.

I would refer to *Sunal v. Large*, 332 U. S. 174, 91 L. Ed. 1982, 67 Sup. Ct. 1588 (1947), in which habeas corpus was denied where petitioner had failed to appeal:

So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of *habeas corpus* will not be allowed to do service for an appeal.

and I see no reason why the same rule does not apply to state convictions. Later in the opinion, the court said:

> If in such circumstances, *habeas corpus* could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. . . . If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by *habeas corpus,* litigation in these criminal cases will be interminable.

The petition before us, and literally thousands like it brought annually before the courts of the land, makes prophesy of the foregoing words and demonstrates that where habeas corpus becomes a substitute for appeal criminal cases will be interminable.

In equally prophetic language, the United States Supreme Court again foretold the hazards of such substitutions saying in *Brown v. Allen,* 344 U. S. 443, 97 L. Ed. 469, 73 Sup. Ct. 397 (1953):

> The writ of habeas corpus in federal courts is not authorized for state prisoners at the discretion of the federal court. It is only authorized when a state prisoner is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2241. That fact is not to be tested by the use of habeas corpus in lieu of an appeal. To allow habeas corpus in such circumstances would subvert the entire system of state criminal justice and destroy state energy in the detection and punishment of crime.

and, finally, in the same opinion:

> A failure to use a state's available remedy, in the absence of some interference or incapacity, . . . bars federal habeas corpus.

Petitioner, having failed to use the state's available remedy of appeal, ought not now be heard to assert the same claims which he years ago thought too trifling to urge.

If the majority opinion is given the precedential value to which it is entitled, then I fear that we have fashioned a formidable instrument with which to attack the administration of justice at its weakest point, the point where the case ought to end. We will have devised a means to prevent

finality in criminal judgments. The majority opinion establishes a procedure readily employable by thousands of penitentiary inmates in this country to set in motion again and again the slow, ponderous machinery of the judicial system for repeated re-examinations of the very facts upon which convictions were had, and thus conclusively establish that a criminal case shall never end, but go on and on until finally concluded by the death or discharge of the felon, or the machinery of justice wears out—whichever occurs first.

Petitioner has received all of the process due him. He has had all of the days in court to which he is entitled. A lawsuit—whether civil or criminal—should one day terminate. I would end this one by dismissing the petition.

DONWORTH and OTT, JJ. (dissenting)—We concur in all of Judge Hale's dissenting opinion except the first sentence thereof.